Robert G. JACKSON, Plaintiff,

Robert P. Gettys, Attorney–Appellant,

v.

The LAW FIRM OF O'HARA, RUBERG, OSBORNE AND TAYLOR, et al., Defendants–Appellees.

No. 88–5634.

United States Court of Appeals, Sixth Circuit.

Argued March 27, 1989.

Decided May 26, 1989.

Rehearing Denied, Opinion Corrected June 26, 1989.

Before MERRITT and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

This is an appeal by an attorney from an order imposing sanctions against him for violating Rule 11 of the Federal Rules of Civil Procedure. The district court ordered attorney Robert Gettys to pay attorneys' fees of more than $40,000 to law firms engaged in the defense of a legal malpractice action brought by Gettys on behalf of Robert Jackson, in which summary judgment was entered for the defendants. The plaintiff did not appeal from the summary judgment, and the only issues before us relate to the sanctions.

## I.

The legal malpractice action was based on the alleged failure of the law firm of O'Hara, Ruberg, Osborne and Taylor (hereinafter O'Hara) to defend a wrongful death action on behalf of Robert Jackson. It is necessary to recite the factual background in some detail before considering the Rule 11 issues.

### A. *The Wrongful Death Action*

Joy Noble was killed while riding as an unauthorized passenger in a truck driven by Robert Jackson. Jackson's employer, Usher Transport, Inc., owned the truck. Jack Noble, the administrator of Joy Noble's estate, filed a wrongful death action against Jackson and Usher Transport in the Campbell County, Kentucky Circuit Court on March 13, 1978. Noble also sued the George Wiedemann Brewing Company, charging that it negligently loaded the truck, causing the truck to overturn and burn, killing Joy Noble. Noble demanded $403,000 in damages. The complaint and docket sheet listed Charles H. Schaffner as attorney for Noble.

Usher Transport was insured by Carriers Insurance Company, which retained the O'Hara firm to defend Usher Transport in the wrongful death action. In its initial correspondence retaining O'Hara, Carriers Insurance noted that Usher Transport gave

Thomas W. Beiting, New Port, Ky., for Robert P. Gettys.

Robert G. Breetz, Louisville, Ky., for Law Firm of O'Hara, John J. O'Hara, Donald J. Ruberg, Robert E. Ruberg, Arnold S. Taylor, David B. Sloane, and Gary J. Sergent.

Jackson no authorization to carry Joy Noble as a passenger. This fact made Carriers Insurance question whether it was required to provide Jackson a defense under its insurance contract with Usher Transport. O'Hara, on March 31, 1978, advised Carriers Insurance that a possible conflict of interest existed between its defense of Usher Transport and a defense of Jackson. O'Hara suggested that other counsel not associated with O'Hara represent Jackson.

On April 11, 1978, Carriers Insurance directed O'Hara, on behalf of Usher Transport and Jackson, to enter an agreed order with Noble's counsel extending the time to answer Noble's complaint by thirty days. Carriers Insurance required time to assess any possible duty it might have to defend Jackson. On April 25, 1978, Carriers Insurance notified O'Hara that it would not provide a defense for Jackson. On the same day, Carriers Insurance wrote Jackson informing him that it would not provide for his defense. Carriers Insurance directed O'Hara to prepare an answer and a cross-claim for Usher Transport against Jackson.

After Jackson wrote Carriers Insurance on October 1, 1978, complaining that he could not afford his own attorney, Donald Ruberg of O'Hara wrote Jackson detailing that Carriers Insurance was not obligated to defend him because, by offering Joy Noble an unauthorized ride, he acted outside the scope of his employment. It is undisputed that Jackson received this letter because it was delivered certified mail, return receipt requested.

The state wrongful death action continued against Usher Transport, Jackson, and George Wiedemann Brewing Company. On September 24, 1979, Jackson was deposed. O'Hara appeared at this deposition representing only Usher Transport. In fact, Donald Ruberg, of O'Hara cross-examined Jackson. According to Ruberg, he advised Jackson, at this time, that O'Hara did not represent him and that Jackson should obtain counsel.

In June 1981 Noble moved to strike the pleadings of Usher Transport and Jackson for failing to answer interrogatories. Noble also moved for a default judgment against Jackson for failure to answer Noble's complaint. The motion's certification revealed that O'Hara was served as attorney for both Jackson and Usher Transport. On August 17, 1981, the Campbell Circuit Court entered an order granting a default judgment to Noble against Jackson. The court postponed the determination of damages against Jackson until trial against the other defendants.

The wrongful death action languished in state court for approximately three years. In May 1984 the Campbell Circuit Court notified Schaffner, Noble's attorney, and Donald Ruberg of O'Hara that the case would be dismissed for lack of prosecution unless good cause could be shown why it should remain on the docket.

Appearing for Noble for the first time, Robert Gettys requested that the case not be dismissed because he had recently taken the case over from Schaffner. The court dismissed the case for lack of prosecution in June 1984. Gettys moved the court to reconsider this decision, but the judge denied Gettys' motion.

In May 1985 Robert Gettys filed with the Campbell Circuit Court a notice that a hearing concerning damages in the action of *Noble v. Jackson, et al.*, would be conducted before Judge Kopowski who had entered the order of dismissal. The certification of Gettys' "notice" stated that Gettys had sent copies of the notice to Bernard Blau as attorney for George Wiedemann Brewing Company, to Donald Ruberg as attorney for Usher Transport, and to Robert Jackson by United States mail. The hearing for damages took place on June 11, 1985, before Judge Kopowski. Gettys was the only attorney who appeared. Judge Kopowski entered a judgment against Jackson in the amount of $3,985,000 apparently in response to an oral motion to increase the ad damnum. The court noted that Noble had obtained a default judgment against Jackson for failure to defend and noted that it had dismissed the matter against the defendants, Usher Transport and George Wiedemann Brewing, for the plaintiff's failure to prosecute.

In October 1986, Gettys located and visited Jackson in Tennessee. According to Gettys, at this meeting, Jackson told Gettys that O'Hara had never informed him that it was not representing him in the wrongful death action. Gettys then caused Jackson to execute an assignment to Jack Noble of any claims he had against Carriers Insurance for refusing to represent him or against O'Hara for malpractice for failing to represent him.

## B. *The Malpractice Action*

Five days later in October 1986, Gettys filed this diversity malpractice action in the district court against the present partners of O'Hara and a former partner. The complaint failed to mention the assignment of Jackson's claims and was purportedly brought by Gettys as counsel for Jackson, the named plaintiff. The complaint alleged that O'Hara began to defend Jackson by entering the April 11, 1978, agreed order extending the time to answer Noble's complaint. It charged that O'Hara failed to pursue its duty to defend Jackson and even violated this duty by filing a cross-claim against him. The complaint requested four and one-half million dollars in damages. Gettys concedes that he did not contact O'Hara to corroborate Jackson's statement that O'Hara never informed him it would not defend him. Gettys claims to have relied upon the Campbell Circuit Court's record notation that O'Hara appeared as attorney of record for Jackson when the parties filed the agreed order continuing the case for 30 days to plead. However, the circuit court docket sheet lists Ruberg of O'Hara as attorney for Usher Transport only. No attorney is listed for Jackson.

In the malpractice complaint the plaintiff alleged that O'Hara had failed to notify Jackson either that it would not defend him or that O'Hara had sued him on a cross-claim. O'Hara specifically denied these allegations in its answer. O'Hara filed a motion for summary judgment on the basis of a Kentucky statute of limitations. When Jackson responded that he only learned of his cause of action when advised by Gettys on October 11, 1986, O'Hara filed a reply detailing the notices to Jackson in 1978 that neither Carriers Insurance nor O'Hara was defending the Noble claim against Jackson. Both John O'Hara and Donald Ruberg filed affidavits with exhibits verifying O'Hara's claim that Jackson had received actual notice in 1978 that O'Hara was not representing him.

At a hearing on O'Hara's motion for summary judgment, the defendants and the court learned for the first time that Jackson had assigned all of his claims to Noble. The court ordered Gettys to file the assignment. The district court denied summary judgment on the ground of limitations, but granted O'Hara time to renew its motion on other grounds. The parties then filed a detailed stipulation, and O'Hara informed the court that the Campbell Circuit Court recently had set aside the $3,985,000 judgment against Jackson as "null and void." The circuit court held that its August 1981 order dismissing the wrongful death action for lack of prosecution was a final dismissal of the entire case with prejudice. Because the default judgment was merely an interlocutory adjudication of liability and, absent a hearing and proof of damages, was not a final judgment, the order of dismissal applied to Jackson as well as the other defendants. Thus, the court had no jurisdiction over any of the defendants in the wrongful death action when it entered the judgment for damages.

In an obvious effort to avoid sanctions, Gettys then filed a motion to hold the malpractice action in abeyance until he could appeal the state circuit court ruling or to dismiss the malpractice action voluntarily under Fed.R.Civ.P. 41(a)(2). The defendants countered with a motion for Rule 11 sanctions. Following oral argument the district court entered summary judgment for all defendants in the malpractice action and took the motion for sanctions under advisement, directing the parties to file memoranda.

## C. *The Sanctions*

The district court specifically found that Gettys failed to make the adequate factual investigation that Rule 11 requires prior to

filing a complaint. The state court docket sheet showed that Usher Transport sued Jackson by cross-claim. The record revealed that O'Hara cross-examined Jackson at his deposition. The docket sheet did not list Ruberg or any member of O'Hara as attorney for Jackson. The only indication of any connection between O'Hara and Jackson was the agreed order. Even a cursory examination of Usher Transport's answer and cross-claim would have revealed that O'Hara did not represent Jackson. All facts, therefore, indicated that O'Hara probably had notified Jackson that it was not representing him and Gettys behaved unreasonably by not inquiring beyond Jackson's false statement that O'Hara had not. The court also found that Gettys failed to make a reasonable inquiry into existing law before initiating the malpractice action.

In addition, the district court found Gettys' actions replete with contradictions designed to defraud the court. (1) Gettys knew that the wrongful death action was dismissed for failure to prosecute but still sought damages upon the default judgment. Also, Gettys should have known by investigating the record that the default judgment against Jackson was invalid because Jackson was not properly served with the motion for default judgment; only O'Hara, who was not Jackson's attorney, received that motion. (2) Gettys obviously believed that O'Hara did not represent Jackson when he mailed notice of the damages hearing to Jackson individually at his last known address. (3) Gettys took advantage of Jackson's lack of interest in defending himself and "bootstrapped" the damage award in state court with the intent of enforcing it against Usher Transport. (4) Gettys' inconsistent positioning shows that he received Jackson's assignment through fraud. Assuming he reasonably believed that O'Hara represented Jackson, Gettys would have known that Jackson was not properly served with notice of the damages hearing. Without a proper notice, the damages hearing was a nullity and thus Jackson had suffered no injury from O'Hara's failure to defend him. Injury is an essential element of a legal malpractice action.

But, if Gettys knew O'Hara did not represent Jackson, the assignment and district court complaint recited a false fact—that O'Hara represented Jackson. Further, assuming he reasonably believed that O'Hara did represent Jackson, Gettys violated ethical rules by simply talking with Jackson. Gettys also failed to appreciate that his first client, Noble's estate, had a conflict of interest with Jackson and Gettys' representation of Jackson was, therefore, improper. (5) Gettys did not bring the malpractice action in the name of the real party in interest, the assignee.

The court ordered sanctions in the form of attorneys' fees to be paid to O'Hara, to the attorneys who represented O'Hara, and to the attorneys who represented O'Hara's former partner, Osborne. The court set an hourly rate at $100 per hour for all time expended, including the time required for the Rule 11 motion. The court, citing its discretion, increased the prevailing hourly rate charged to insurance companies (between $67 and $75 per hour) because of the "flagrant violation" of Rule 11. The court also permitted the law firms to be reimbursed for paralegal and secretarial expenses at cost plus 20%. The magistrate upheld the defendants' hourly itemizations based upon the $100 per hour rate set by the district court. The district court affirmed the magistrate's recommendation that Gettys pay over $40,000 in attorneys' fees as sanctions.

II.

■ As amended in 1983, Rule 11 states in relevant part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modifi-

cation, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Rule 11 is concerned with an attorney's certification to the court, by signing a pleading or other court paper, that the attorney believes on the basis of reasonable inquiry that there is a reasonable basis in law and fact for the position taken and that the paper is not filed for an improper purpose. The rule relates to papers filed in court by an attorney, not to questionable attorney conduct in general. A statute, 28 U.S.C. § 1927, subjects attorneys to personal liability for unreasonably and vexatiously "multipl[ying] the proceedings in any case." The focus of Rule 11, then, is narrow; it relates to a specific act—the signing, and to a specific time—the time of signing. While Rule 11 does not create a continuing obligation like that imposed by § 1927, it does apply to each paper signed by an attorney. Thus, an attorney may commit more than one violation in a given case. *Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 874–75 (5th Cir.1988).

▮ Rule 11 imposes three obligations on the signing attorney. First, the attorney must conduct a reasonable inquiry to determine that the document is well grounded in fact. Second, the attorney must conduct a reasonable inquiry to determine that the positions taken are warranted by existing law or as good faith arguments for extension or modification of existing law. Third, the document must not be filed for any improper purpose. These obligations imposed by the 1983 amendments expand the reach of Rule 11 beyond one that merely sanctions an attorney for litigating in bad faith. Thus, an attorney's good faith is not a defense. See generally,

Schwarzer, Sanctions Under the New Federal Rule 11—A Closer Look, 104 F.R.D. 181 (1984); Committee Note to 1983 amendment to Rule 11. The court judges the attorney's conduct by "an objective standard of reasonableness under the circumstances." *INVST Financial Group Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir. 1985), *cert. denied*, — U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Once a district court finds that an attorney has violated Rule 11, it is required to impose some sanction. *INVST*, 815 F.2d at 401; *Albright v. Upjohn Co.*, 788 F.2d 1217, 1222 (6th Cir. 1986); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C.Cir.1985). However, once the district court determines that an attorney has violated Rule 11, the court has wide discretion in selecting the appropriate sanction. *INVST*, 815 F.2d at 401; *Albright*, 788 F.2d at 1222; *Westmoreland*, 770 F.2d at 1174.

▮ The sanctions that may be imposed include "a reasonable attorney's fee." In common with other courts, we have held that "a reasonable attorney's fee" does not necessarily mean actual legal expenses incurred. *INVST*, 815 F.2d at 404. See also *Stewart v. American International Oil & Gas Co.*, 845 F.2d 196, 201–02 (9th Cir. 1988); *Thomas*, 836 F.2d at 878–79, 881. The two goals of Rule 11 are deterrence and compensation. Of these two, deterrence is the principal goal. *Doering v. Union County Board of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988); *Thomas*, 836 F.2d at 881; *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1437–38 (7th Cir. 1987). There is agreement among the circuits, with which we concur, that because deterrence, not compensation, is the principal goal of Rule 11, courts should impose the least severe sanction that is likely to deter. *Doering*, 857 F.2d at 194; *Stewart*, 845 F.2d at 202; *Thomas*, 836 F.2d at 878; *Brown*, 830 F.2d at 1437.

■ In determining the amount of attorney's fees to impose as a sanction, the court must consider whether the party to receive the award has acted promptly to bring a violation of Rule 11 to the court's attention. A party who seeks attorney's fees as a Rule 11 sanction must mitigate damages by acting promptly and avoiding any unnecessary expenses in responding to papers that violate the rule. *INVST,* 815 F.2d at 404. It is an abuse of discretion to award all fees claimed when a party has expended a great deal of time and effort defending patently frivolous claims that could have been dismissed on motion or request for a pretrial conference at an early stage in the proceedings. *Oliveri v. Thompson,* 803 F.2d 1265, 1280 (2d Cir. 1986); *United Food & Commercial Workers v. Armour & Co.,* 106 F.R.D. 345, 349–50 (N.D.Cal.1985). Such fees are not "reasonable."

■ The district court must make some inquiry concerning an attorney's ability to pay a monetary sanction. Rule 11 should not be used as a vehicle to drive an attorney out of practice. *Doering,* 857 F.2d at 195–96. Thus, even when the offended party's actual expenditures appear reasonable, a district court may determine in its discretion that a smaller amount should be awarded as a sanction in consideration of the financial resources of the offending attorney. *Oliveri,* 803 F.2d at 1281; *Thomas,* 836 F.2d at 881. When a fraction of the actual and reasonable fees requested is sufficient to deter future violations, it is not an abuse of discretion to award such lesser amount. *Stewart,* 845 F.2d at 202. Failure to consider ability to pay is, however, an abuse of discretion.

### III.

■ The record fully supports the district court's conclusion that Gettys violated Rule 11. Gettys became attorney of record for Jack Noble in the wrongful death action in June 1984. The state court record showed that O'Hara had never represented Jackson after signing an agreed order on behalf of Jackson and his employer in 1978 for a 30–day extension of time to file an answer. Numerous entries in that record indicated that O'Hara did not represent Jackson, but in fact had asserted claims against him on behalf of his employer. A modicum of inquiry would have informed Gettys that O'Hara did not represent Jackson in the wrongful death action. Furthermore, Gettys' own actions showed the unreasonableness of his position. When Gettys made a motion for a hearing on damages and set a deposition, he served notice of the motion and hearing on Jackson individually, not on O'Hara.

Gettys argues that when O'Hara signed the agreed order on behalf of Jackson as well as Usher Transport, O'Hara became Jackson's attorney as a matter of law with a duty to defend the claims against him. Gettys relies on *Martin v. Cole,* 191 Ky. 418, 230 S.W. 535 (1921), which held that a defendant who originally appeared solely for the purpose of filing a motion to quash summons, but who later appeared by counsel at depositions and cross-examined witnesses, had entered a general appearance in the action. *Martin v. Cole* has no bearing on the legal question of whether O'Hara represented Jackson subsequent to entry of the agreed order; the only issue in *Cole* was what constitutes an entry of appearance.

Although we have found no Kentucky case determining what constitutes an attorney-client relationship for malpractice purposes, courts generally base their conclusions on whether a contract of representation has been executed or whether the alleged client is reasonably justified in believing that the attorney represents him. See, e.g., *Nolan v. Foreman,* 665 F.2d 738 (5th Cir.1982) (contract); *Dalrymple v. National Bank and Trust Co.,* 615 F.Supp. 979 (W.D.Mich.1985) (reasonable perception). By obtaining an extension of time to answer while Carriers Insurance determined whether it had a duty to defend Jackson, O'Hara protected Jackson as well as Carriers Insurance from suffering a default while the necessary investigation was conducted. A telephone call or letter to O'Hara would have disclosed the true facts. Reliance on *Martin v. Cole,* which decided

a different issue, did not constitute a reasonable inquiry into the question of whether O'Hara represented Jackson under existing law.

A more egregious failure to inquire into the existing law relates to the assignment. Five days before he filed the complaint, Gettys obtained an assignment of causes of action from Jackson. As part of the consideration for the assignment Noble covenanted that he would not attempt to enforce the wrongful death judgment against Jackson personally. Noble had not attempted to collect the judgment prior to receiving the assignment. Thus, when Gettys filed the malpractice action, Jackson had not only failed to suffer damages as the result of the wrongful death judgment but had entered into a contract which foreclosed the possibility that he could ever suffer injury from it. The law of Kentucky was clear in 1986 that a malpractice action against an attorney cannot be established in the absence of a showing that the plaintiff actually has been damaged as a result of the attorney's dereliction. *Mitchell v. Transamerica Insurance Co.*, 551 S.W.2d 586, 588 (Ky.App.1977). The slightest research would have revealed that Jackson did not have a cause of action against O'Hara for malpractice.

The district court's recitation of the "contradictions" in the record fully supports the conclusion that Gettys filed the malpractice complaint for improper purposes. We agree with the district court that Gettys violated all three of the Rule 11 requirements. He did so in signing the complaint and in signing papers filed subsequently in attempts to argue the viability of the malpractice action and to avoid sanctions.

## IV.

O'Hara was represented in the malpractice action by Stites & Harbison, another Kentucky law firm. Gettys stipulated that the reasonable billings and expenses of Stites & Harbison were $14,655, the amount recommended by the magistrate and adopted by the district court. Gettys objected to the recommendation that he be required to pay O'Hara $16,308 and the law

firm representing Osborne, the former O'Hara partner, $9,500. The district court adopted both recommendations and entered judgment accordingly. We examine the judgment and Gettys' objections in light of the principles and other considerations outlined in Part II of this opinion.

There is no evidence that the defendants incurred unneeded expenses in the malpractice action. They answered the complaint promptly and specifically denied the allegation that they had failed to notify Jackson that O'Hara did not represent him. When Jackson sought to avoid dismissal on limitations grounds by claiming (in a memorandum signed by Gettys) that he first learned that he had been "abandoned" by O'Hara on October 11, 1986, O'Hara filed a response outlining the steps that the law firm and Usher Transport's insurer had taken to notify Jackson that O'Hara was not supplying his defense. Copies of the letters to Jackson were filed with affidavits in support of O'Hara's response. Similarly, when the assignment finally came to light, O'Hara promptly renewed its motion for summary judgment with supporting supplemental affidavits and filed an amended answer pleading the assignment as a defense. Again, immediately upon learning that the Campbell Circuit Court had set aside the wrongful death judgment against Jackson, O'Hara advised the district court. We conclude that the deviousness and obduracy of Gettys, not any delay or unnecessary actions by the defendants, are responsible for the size of the record before us.

Although the defendants sufficiently justified the number of hours devoted to the malpractice case, we can find no basis other than the reference to a "flagrant violation" for the district court's decision to compute attorneys' fees at a rate higher than that ordinarily paid in the community. Nor do we find justification for adding 20% to the actual charges for paralegal and secretarial work. In most cases, including the present one, a "lodestar" calculation of attorney's fees and actual charges for related expenses will provide a sufficient de-

terrent.[1] Therefore, it was an abuse of discretion to compute fees and expenses based on hourly charges in excess of the prevailing market rate in the absence of a finding that prevailing rates and actual expenses will not provide an adequate deterrent. On remand the district court will recompute the attorneys' fees and expenses of O'Hara and Trusty, the firm representing former partner Osborne, using prevailing fees for attorneys and actual charges for paralegals and secretaries.

In reaching this decision, we recognize that imposing monetary sanctions pursuant to Rule 11 above a defendant's actual litigation costs may be construed as a fine imposed for criminal contempt. A few scholars have concluded that greater due process safeguards might apply to a fine imposed as criminal punishment. Schwarzer, 104 F.R.D. at 202–03; Nelken, *Sanctions Under Amended Federal Rule 11— Some "Chilling" Problems in the Struggle Between Compensation and Punishment*, 74 Geo.L.J. 1313, (1986). However, one court of appeals, en banc, concluded that "[n]othing in the text of Rule 11 or in the Advisory Committee Note indicates that due process requires a court to follow the procedures called for by Fed.R.Crim.P. 42(b) for criminal contempt proceedings before it can impose a monetary sanction pursuant to Rule 11" when the court vacated a panel decision reversing a district court's imposition of a $500 fine payable to the court clerk. *Donaldson v. Clark*, 819 F.2d 1551, 1558 (11th Cir.1987). We do not reach the issue whether the district court's $100 hourly rate or 20% addition constituted a criminal fine imposed with inadequate due process safeguards. Because we conclude that the prevailing market rate and actual paralegal and secretarial charges provide adequate deterrence this award of sanctions cannot be construed as a fine imposed for criminal contempt.

Before entering judgment on remand the district court will also determine if any equitable considerations exist for setting the total attorneys' fee sanction at an amount less than the total requested by the defendants and found reasonable by the standards set out above. The court will make a specific finding with respect to Gettys' ability to pay the sanction imposed. This court has not previously imposed a requirement that the district court consider mitigating factors in imposing Rule 11 sanctions, and we understand the necessity to avoid turning Rule 11 proceedings into second trials. However, upon consideration of the primary purpose of Rule 11 to deter filing frivolous lawsuits and filing court papers for improper purposes, we agree with those courts that have concluded that full recovery for reasonable time and expenses incurred by the offended party is not invariably required. Extenuating circumstances should be taken into account.

The district court's decision to impose sanctions for Gettys' violation of Rule 11 is affirmed. There is no appeal from the stipulated computation of attorney's fees and expenses of Stites & Harbison. The amount of sanctions computed as attorneys' fees and expenses of O'Hara and Trusty is vacated, and the case is remanded for proceedings consistent with this opinion.

---

1. The "lodestar" calculation of reasonable fees consists of multiplying the number of hours reasonably expended on the litigation by the rate prevailing in the community for attorneys practicing in the field of law involved in the particular case. See *Coulter v. State of Tennessee*, 805 F.2d 146, 149 (6th Cir.1986), *cert. denied*, 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987).