Mary C. KEENER

v.

**DEPARTMENT OF the ARMY, Honorable Michael W.P. Stone, Secretary of the Army.**

No. 3–87–0647.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 8, 1991.

James C. Thomason, III, Asst. U.S. Atty., Nashville, Tenn., for defendants.

## MEMORANDUM

JOHN T. NIXON, District Judge.

Presently before the Court is an action brought by the plaintiff's attorney [1] to recover fees and expenses incurred in his representation in the above-styled employment discrimination action. Also before the Court is a motion by the defendants for sanctions against the plaintiff's counsel under Rule 11 of the Federal Rules of Civil Procedure. Upon the stipulations of the parties and testimony of each parties' witnesses, the Court conducted a bench trial on this matter on June 7–8, 1990 and October 4, 1990. The Court has considered the record in this case, which includes the pleadings, the stipulations of the parties, and the exhibits and statements of counsel. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court hereby makes and enters the following Findings of Fact and Conclusions of Law as a final adjudication of this action.

## I. FINDINGS OF FACT

This suit arises from the employment discrimination claim brought by the plaintiff, Mary C. Keener, against the defendants, the United States Army ["the Army"] and the Secretary of the Army, under Title VII, 42 U.S.C. §§ 2000e to 2000e–17 (1982). In September of 1983, Ms. Keener submitted a formal Title VII administrative charge against the defendants alleging sexual harassment by Army personnel at Fort Campbell, Kentucky, where she had been employed. Shortly thereafter, the Army dismissed Ms. Keener's administrative charge. Ms. Keener appealed this decision to the Equal Employ-

---

**1.** Due to the stigma attached to the imposition of sanctions, the Court will hereinafter refer to Ms. Keener's attorney as "Counsel." *See* Schwarzer, Sanctions Under the New Federal Rule 11—A Closer Look, 104 F.R.D. 181, 202 (1985).

ment Opportunity Commission ["EEOC"] which, on March 11, 1985, reversed the Army's dismissal and remanded the case to the Army for a non-adversarial investigative proceeding. A few days later, the Army's investigator, an official of the United States Army Civilian Appellate Review Agency ["USACARA"], issued a decision finding that Ms. Keener had been constructively discharged from the Army because of sexual harassment. The investigator recommended that the Army take corrective action in the form of make-whole relief which it agreed to do in a settlement agreement reached with Ms. Keener on May 8, 1986. Pursuant to the agreement, the Army provided make-whole relief which included a payment of $24,820.08 to cover Ms. Keener's back-pay.

Although Counsel and his client never reduced their fee arrangement to writing, they agreed that Counsel would split with Ms. Keener, up to fifty (50) percent, any recovery she might receive in the Title VII action, plus any attorney's fees he might receive.[2] Trial Testimony of Counsel, Oct. 4, 1990; Deposition of Counsel, Vol. 1, at 22, 42, 45, 47, 52, Defendant's Trial Exhibit # 6, Oct. 4, 1990 [hereinafter Counsel's Deposition Vol. I.]; Deposition of Mary C. Keener, at 7, Defendant's Trial Exhibit # 4 [hereinafter Keener Deposition]. Under this fee arrangement, Ms. Keener paid one-half of the settlement award she received from the Army, or $13,649.59, to Counsel. Defendant's Trial Exhibit # 1, Oct. 4, 1990; Keener Deposition at 23, 24; Counsel's Deposition Vol. I at 49.

Under the administrative settlement, the Army also agreed to pay reasonable attorney's fees pursuant to Army regulations. Counsel submitted a fee petition to the Army for 898.5 hours of work on Ms. Keener's behalf at a rate of $100.00 per hour. Fee Petition of Counsel, Exhibit # 3 to Defendant's Pre–Trial Brief [hereinafter

Counsel's Fee Petition]. Specifically, Counsel sought $89,850.00 in fees and $3,216.11 in expenses for a total of $93,066.11.[3] Id. Counsel advised the Army in his fee petition that he planned to split any award of fees with his client. Id. The Army refused to award any fees or expenses to Counsel because the Army considered his fee petition to be excessive, misleading and in bad faith. Supporting Brief for the Denial of Attorney Fees at 9, June 20, 1986, Plaintiff's Trial Exhibit # 21, Oct. 4, 1990. After an appeal by Ms. Keener, the EEOC reversed the Army's decision and remanded the case to the Army to decide upon a reasonable fee.

After a second review of Counsel's petition, the Army determined that a reasonable award would be $12,159.97. Letter of Assistant Secretary of the Department of the Army, Sept. 15, 1986, Plaintiff's Trial Exhibit # 21, Oct. 4, 1990. However, the Army proposed to pay only half of this amount to Counsel in light of his fee-splitting arrangement with Ms. Keener. Id. In addition, the Army refused to pay the other half of the fee award to Ms. Keener because it considered Counsel's fee arrangement with Ms. Keener to be unethical. Id.

Counsel refused the Army's offer and Ms. Keener filed suit in this Court, seeking the enforcement of the settlement agreement between the plaintiff and the Army. Her Complaint prays that Counsel be reimbursed for: 1,200 hours of work at a rate of $100 per hour plus the expenses incurred in representing the plaintiff in her Title VII claim against the Army adjusted upward by one-third; 101 hours at a rate of $100 and all expenses incurred in appealing the Army's decision not to pay him any fee to the EEOC; and all attorney's fees and expenses incurred in bringing this lawsuit.

The Army continues to object to Counsel's fee petition for $93,066.11 on the

---

**2.** At trial, the expert witness called by Counsel testified that in his opinion Counsel's fee arrangement with Ms. Keener was unethical. Testimony of Richard Dinkins, June 1990.

**3.** During his negotiations with the Army to reach a settlement on Ms. Keener's claim, Coun-

sel informed the Army that he would seek $15,-000 in attorney's fees for work he performed through July 29, 1985. Letter of Counsel, July 29, 1985, Exhibit No. 11, Counsel's Deposition Vol. I.

grounds that it is grossly excessive and constitutes an unconscionable exercise of billing judgement. The Army objects to Counsel's hourly rate of $100 and objects to the number of hours Counsel claims he spent on the administrative claim. The Army contends that the record supports an award of no more than $15,375. The Army has requested that the Court deny Counsel's fee request in light of the special circumstances the Army asserts are present in this case, i.e., his unconscionable billing judgment, grossly excessive fee petition, and bad faith multiplication of this litigation. Finally, the defendant contends that Counsel filed the complaint in this case in violation of Rule 11 of the Federal Rules of Civil Procedure.

Counsel did not keep contemporaneous time records for large portions of the work he performed for the Title VII claim. Counsel's Deposition, Vol. I at 27–29. Prior to 1987, notations on legal pads, a small tear-off desk calendar and the inside of file folders served as the means by which Counsel kept track of his time. *Id.* at 19, 21, 26, 31, 179. Depending on whether the matter on which he was working was "significant," he would compile a record of time spent for a matter on a daily, weekly, monthly or yearly basis. *Id.* at 29. He did not keep the originals that he used to make his compilations. *Id.* At trial, Counsel introduced what appears to be his entire case file on Ms. Keener's Title VII claim, with documents dating back to the time Counsel began his representation of Ms. Keener in this matter. *See* Plaintiff's Trial Exhibits, 1, 3, 6, 7, 8, 11, 12, 17–20. However, the notes, letters and material that comprise these exhibits do not contain any markings indicating the amount of time spent by Counsel on the subject matter of documents. *Id.* At his deposition, Counsel consistently could not recall whether hand-written time sheets were contemporaneous records, when he made the records, whether he might have made the records as a reconstruction of his time to answer ethical charges brought against him for his conduct in this case or to answer the Army's contentions about his billing in this case or the materials upon which he relied in drawing these time sheets.[4] *Id.* at 122–145. A significant number of entries on the fee petition do not state the subject matter of meetings or conversations that are listed. Similarly, Counsel's handwritten time sheets detail an amount of time but they do not state any activity undertaken by Counsel. Counsel's Deposition Vol. I, Exhibit Nos. 14–17.

By his own admission, Counsel also billed the Army for work he did for Ms. Keener that had nothing to do with her Title VII claim. Counsel's Deposition Vol. I. 39, 54, 55, 58–61. This work included Ms. Keener's claims for social security, civil service retirement, and an automobile accident, as well as work on the sale and purchase of a house. *Id.* at 54–60; Deposition of Mary C. Keener, Sept. 29, 1988, at 84–85. Counsel did not keep separate time records for any of the non-Title VII work he undertook on Ms. Keener's behalf. These matters are not separately stated in Counsel's fee petition.

In addition, Counsel has repeatedly admitted double-billing the government by seeking compensation for the same services from both the U.S. Army and the U.S. Department of Labor for work on Ms. Keener's Title VII claim and on a workers compensation claim she filed.[5] Trial Testimony of Counsel, Oct. 4, 1990; Counsel's Deposition, Vol. I. at 39, Vol. II. at 170–172, 174, 250–251. Counsel did not inform either the Army or the Department of Labor that duplicate fee petitions had been

---

4. On July 8, 1986, the General Counsel of the Department of the Army requested that the Board of Professional Responsibility of the Supreme Court of Tennessee investigate whether Counsel's conduct in this case warranted disciplinary action against him. Letter of Susan J. Crawford, July 8, 1986, Exhibit 1 to Response to Secretary's Motion for Sanctions, Docket Entry No. 38.

5. Counsel sought $16,552.50 from the Department of Labor for 331.05 hours he contends he worked on Ms. Keener's workers compensation claim. Fee Application for Workers Compensation Claim, Exhibit 4 to Counsel's Deposition [hereinafter Department of Labor Fee Petition].

submitted or that he planned to split any fee award with Ms. Keener, even if he was compensated twice for the same hours. Counsel's Deposition, Vol. II, at 172–176. A comparison of both petitions and the record in this case reveals that Counsel is seeking reimbursement from the Army for over 200 hours of services for which he sought compensation from the Department of Labor. *Compare* Counsel's Fee Petition *with* Counsel's Department of Labor Petition; *see* Counsel's Deposition, Vol. II at 170–172, 250–251; Affidavit of Robert Belton, Defendant's Trial Exhibit No. 3, Oct. 4, 1990 at paragraphs 12, 19–21, 24–25.

The record is replete with instances of Counsel's double-billing. *See e.g.*, Counsel's Deposition at 170–253. For instance, for January 23, 1984, Counsel claims a total of 28 hours of work on both petitions; this consists of 14 hours on each petition for the same activities. *Compare* Counsel's Department of Labor Petition at 2 *with* Counsel's Fee Petition at 8. Another example, is found on a handwritten time sheet dated September 1983 that lists four fifteen minute entries noted "Hawaii" on August 26th and a one hour entry also noted "Hawaii" on August 29th. Exhibit No. 14, Counsel's Deposition Vol. II; Counsel's Deposition Vol. II at 120–124. The fee petition in this case and the one Counsel submitted to the Department of Labor both list entries on August 26th and 29th for these telephone calls to Hawaii. *Compare* Defendant's Trial Exhibit No. 2 at 1 *with* Plaintiff's Trial Exhibit No. 6a at 4. Counsel lists the 8 hour trip he made in August 1983 from Gatlinburg to Fort Campbell on both the worker's compensation and Title VII petitions. *Compare* Department of Labor Fee Petition at 2 *with* Counsel's petition at 3–4. There are several other examples of where the number of hours on both petitions is the same: October 7, 1983 (1 hour); October 11, 1983 (1 hour); October 22, 1983 (1.5 hours); January 27, 1984 (2 hours); and January 29, 1984 (5 hours).

By looking at the number of hours claimed by Counsel on both petitions for a given day, there are numerous occasions showing over 20 hours or more of work for a single day. For example, the combined total number of hours for which Counsel is seeking compensation by the U.S. Government for January 22, 1984 is 22 hours; for January 23, 1984 it is 28 hours; for January 24, 1984 it is 24 hours; and for January 25, 1984 it is 25 hours. Thus, Counsel billed the government for 99 hours of work for a 96 hour time period. Since the workers compensation claim was argued on January 26, 1984, there is a strong inference that the services Counsel rendered during the four days prior to the January 26, 1984 were predominantly devoted to the workers compensation claim. This is especially so in light of Counsel's open admission that he routinely listed work he performed during this period on both his Army and Department of Labor petitions. Counsel's Deposition, Vol. II at 170–172.

There are other instances in which Counsel's billing averaged over 24 hours per day. For example, Counsel billed over 72 hours of time to produce and file a complaint in this action that was identical to one he had filed one month earlier. Trial Testimony of Counsel, Oct. 4, 1990.

Travel is another area in which Counsel is seeking double compensation. His fee petition in this case seeks reimbursement at his full hourly rate of $100 for the more than 50 hours of travel time that is separately stated as well as for the expenses incurred in these trips. Counsel's Fee Petition; Counsel's Deposition Vol. I, at 95–96, 97–100. Although many of the hours for travel are not separately stated, Counsel travelled from his home in Gatlinburg, Tennessee to Fort Campbell, Kentucky to interview witnesses, to Nashville and Hopkinsville, Tennessee for an interview with USACARA officials and to Louisville to see the plaintiff and interview medical witnesses. *See* Counsel's Fee Petition. As a matter of billing practice, Counsel's hourly rate does not vary between time spent travelling for a client and time expended performing legal work. Counsel's Deposition Vol. I, at 97–99.

The matter at bar was Counsel's first employment discrimination case. Counsel's Deposition, Vol. I, at 10. Because of his inexperience in this type of action, he spent

four days attending an Equal Employment Opportunity seminar in Nashville. Trial Testimony of Counsel, Oct. 4, 1990; Counsel's Deposition, Vol. I., at 94–97. He is seeking compensation for the approximately 31 hours he spent inquiring about, attending and travelling to and from the seminar. *Id.* Part of the time Counsel spent in Nashville, for which he is seeking compensation, included walking "around downtown Nashville, and just, you know, talk[ing] about what was going on" in Ms. Keener's Title VII claim with an attorney participating in the seminar. *Id.* at 97.

Counsel spent substantial amounts of time conducting research he believed necessary to Ms. Keener's Title VII case. For instance, his fee petition lists 12 hour entries for research on July 30th and July 31, 1983, 8 hours of research on September 22, 1983 and then 40 more hours of research and investigation between September 23–28, 1983. Counsel's Fee Petition. Counsel claims 8 hours of research on January 11, 1986. *Id.* Counsel explained that the 1983 research was required because sexual harassment, as a theory of sex discrimination under Title VII raised a novel and unsettled issue at the time he took the case. Counsel's Deposition, Vol. I, at 81–82. Counsel also believed it necessary to explore the possibility of a claim in federal court against the Army under 42 U.S.C. § 1983. Counsel explained that his research on January 11, 1986 was to find support for an award of compensatory and punitive damages by the Army to Ms. Keener as part of the make-whole relief required by the Title VII settlement agreement. *Id.* at 90, 93.

Counsel spent at least 40 hours interviewing doctors, getting medical examinations and securing psychiatric evaluations of Ms. Keener. The purpose behind this work was to prove compensatory and punitive damages. Counsel's Deposition, Vol. 1, at 93. Counsel submitted this evidence in the Army's nonadversarial investigation conducted between 1985 and 1986 as well as to the Department of Labor in the hearing it conducted on January 26, 1984 on Ms. Keener's unemployment compensation claim. Trial Testimony of Jonell Calloway,

Oct. 4, 1990; Counsel's Deposition, Vol. II. at 244–246; Department of Labor Hearing Transcript: *In the Matter of Mary Keener,* Jan. 26, 1984, at 6, 11, 12, Exhibit 31 to Counsel's Deposition. The Army's investigator, Jonell Calloway, testified at trial that while Ms. Keener's medical evidence had some weight, it was unnecessary for Counsel to offer it. Trial Testimony of Jonell Calloway, Oct. 4, 1990.

The Army's proceeding following the March 11, 1985 EEOC reversal was a nonadversarial fact-finding investigation. Unlike a trial, there was no examination of witnesses. Nor were post-hearing proposed findings of facts or memorandums of law required. Trial Testimony of Jonell Calloway, Oct. 4, 1990. Counsel did make evidentiary and legal submissions to the Army's investigator because he believed them necessary to the proceeding. Counsel's Deposition, Vol. 1 at 92–93; *see* Counsel's Submissions to USACARA, Plaintiff's Exhibit No. 7, Oct. 4, 1990.

As the Court stated earlier, Counsel is seeking reimbursement in this case at an hourly rate of $100. Ordinarily, he does not accept cases on an hourly rate but when he does his hourly rate is $50. Trial Testimony of Counsel, Oct. 4, 1990. By talking with local attorneys about what would constitute a reasonable fee in the case at bar, Counsel arrived at his hourly rate of $100. Counsel's Deposition, Vol. I. at 86–87. According to the trial testimony of his expert witness, Mr. Richard Dinkins, and the affidavits Counsel submitted, the customary hourly rate for an attorney of his skill, experience and reputation in the community in which he practices for the type of matter he undertook is $75 an hour. Trial Testimony of Richard Dinkins, June 7, 1990; Exhibit No. 13, Counsel's Deposition, Vol. I.

At trial, the government introduced, as expert testimony, the deposition of Professor Robert Belton of Vanderbilt Law School. Defendant's Trial Exhibit No. 3, Oct. 4, 1990. Professor Belton examined Counsel's submissions in support of his fee request and estimated a reasonable fee for the work performed and expenses incurred

by Counsel. Following the example of the Supreme Court in the fee case of *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), Professor Belton divided the Title VII claim and fee petition into six discrete phases. Affidavit of Robert Belton, Defendant's Exhibit No. 3, at paragraph 13, Oct. 4, 1990. Professor Belton examined the number of hours claimed and activities undertaken by Counsel for each phase and then opined on the number of hours that would be reasonable for each for an attorney with Counsel's level of skill, experience and reputation. *Id.* Although Counsel's fee petition lists 898.5 hours of work on the Title VII claim, "it is inconceivable to [Professor Belton]

that Counsel could have spent 871.5 hours on this case. *Id.* at paragraph 12. In Professor Belton's expert opinion, a "reasonable" award would be based on only 205 hours of work. *Id.* at paragraph 29. In Professor Belton's expert opinion, a reasonable fee for Counsel in this case would be $15,375 (205 hours multiplied by $75). *Id.* at paragraph 30.

The Army shares Professor Belton's contention that a reasonable award in this case should be based on 205 hours of work. Secretary's Proposed Findings of Fact and Conclusions of Law, at paragraph 21, Nov. 19, 1990. The following represents the phases into which Professor Belton divided the case and the recommended hours he and the Army would consider reasonable:

| | Counsel's petition | Recommended |
|---|---|---|
| PHASE 1: Initial Contact with Plaintiff through Filing EEO Charge | | |
| May 1983—Sept. 28, 1983 | 317.25 | 50 |
| PHASE 2: Filing Administrative Charge through its Dismissal | | |
| Sept. 29, 1983—Oct. 18, 1983 | 37.00 | 5 |
| PHASE 3: Post–Dismissal to Reversal by EEOC | | |
| Oct. 20, 1983—April 15, 1985 | 202.75 | 30 |
| PHASE 4: Post–Reversal to Decision on Merits | | |
| Apr. 17, 1985—Mar. 20, 1986 | 214.25 | 80 |
| PHASE 5: Post Decision to Filing of Fee Petition | | |
| Mar. 21, 1986—May 30, 1986 | 70.25 | 25 |
| PHASE 6: Fee Petition Preparation | | |
| May—June 1986 | 20.00 | 5 |
| MISCELLANEOUS | 10.00 | 0 |
| Totals | 871.50 | 205 |

Belton Affidavit, pp. 9–20; Secretary's Proposed Findings of Fact and Conclusion of Law, paragraph 21.

## II. CONCLUSIONS OF LAW

■ A district court may award reasonable attorney's fees to a prevailing party in a Title VII civil rights case. § 706(k) of Title VII, 42 U.S.C. § 2000e–5(k). Such awards can be made pursuant to a monetary settlement. *Hewitt v. Helms*, 482 U.S. 755, 760–761, 107 S.Ct. 2672, 2675–2677, 96 L.Ed.2d 654 (1987); *Geier v. Richardson*, 871 F.2d 1310, 1312–1313 (6th Cir.1989). Thus, the Army's findings on the merits that Ms. Keener was the victim of sexual harassment at Fort Campbell and the mon-

etary settlement of Ms. Keener's subsequent support her status in this case as a prevailing party.

### Billing Records

The Supreme Court has suggested that the best place to begin a determination of what constitutes a reasonable fee "is the number of hours reasonably expended on the litigation multiplied by a hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). Initially, however, a district court must conclude that the fee applicant has sufficiently documented his time and hourly rate to justify an award of fees. *Hensley,*

461 U.S. at 433, 103 S.Ct. at 1939; *Wooldridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1176 (6th Cir.1990); *United Slate, Tile & Composition v. G & M Roofing*, 732 F.2d 495, 502 (6th Cir.1984).

■ Attorneys who seek fees in Title VII cases have an obligation "to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended" on the case. *Wooldridge*, 898 F.2d at 1177. Counsel need not "record in great detail" each minute he or she spent on an item. *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12 *quoted in Wooldridge*, 898 F.2d at 1177. At a minimum, the documentation offered by an attorney seeking an award of fees "should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12 *quoted in Wooldridge*, 898 F.2d at 1177. In this Circuit, it must be detailed enough for a district court to determine with a high degree of certainty that the time claimed was actually and reasonably spent in pursuit of the relief sought by one's client. *United Slate*, 732 F.2d at 502–503 n. 2.[6]

■ Counsel has not met his burden in documenting the hours he contends he spent on Ms. Keener's Title VII claim. He has conceded his time-keeping practices were sloppy and at his deposition he flippantly commented about maintaining his records on napkins. Counsel's Deposition, Vol. I. at 19, 59.

He did not maintain contemporaneous records of his time or the nature of his work. The evidence he introduced in support of his petition shows that he did perform work on Ms. Keener's Title VII claim. However, the drafts and copies of briefs and correspondence, research notes, case opinions and other written material produced and gathered by Counsel during his representation of Ms. Keener do not contain the notations he maintains he made on them to reflect the time he expended on them. His testimony about the frequency and manner of and justification for compiling and reconstructing time records places the accuracy of his documentation in serious question. The absence of the originals upon which his periodic compilations were made further compounds the Court's ability to judge the reasonableness of his petition. He billed the Army for non-Title VII work which is not separately detailed in his records or petition. His extensive double-billing of the Army and the Department of Labor casts even more doubt on the accuracy of his records and fee petition.

*Reasonableness of Hours/Billing Judgment*

■ During its initial consideration of an appropriate fee, a district court must also judge whether the hours claimed by the petitioner were reasonably expended. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939. The petitioning attorney has an obligation to weed out hours that are excessive, redundant or otherwise unnecessary from his fee request. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939–1940; *see Wooldridge*, 898 F.2d at 1176–1177. In this Circuit, the standard for excluding unreasonable hours is "whether a reasonable attorney would have believed the work [in question] to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge*, 898 F.2d at 1177.

Throughout the entire course of his representation of Ms. Keener, Counsel failed to exercise proper billing judgment. A significant amount of the time Counsel spent researching the law underlying Ms. Keener's Title VII claim was either excessive or unnecessary. It was not at all reasonable for Counsel to bill 31 hours for the 1983 trip he took to Nashville to learn the law underlying Ms. Keener's Title VII claim at an EEO seminar. Counsel should not have

---

**6.** Although *United Slate* concerned, *inter alia*, a fee award under the Fair Labor Standards Act, 29 U.S.C. § 207, the Sixth Circuit's discussion of the standard for documenting a fee petition is on point with the case at bar. This is in light of the Supreme Court's holding that its standards in *Hensley v. Eckerhart, supra*, " 'are generally applicable to in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " *United Slate*, 732 F.2d at 502 *quoting Hensley*, 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7.

had to spend the seventy-two hours listed on his fee petition for the period July 30, 1983—September 28, 1983 on research. Contrary to the justification he offered for this research, sexual harassment, as a theory of sex discrimination under Title VII was settled law at the time he began his representation of Ms. Keener. *See Poe v. Haydon*, 853 F.2d 418, 428 (6th Cir.1988) (detailing that sexual harassment was actionable under Title VII in several circuits and the district courts of the Sixth Circuit before 1983), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989). It was also well-settled that 42 U.S.C. § 1983 is not a vehicle for lawsuits against federal officials. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Counsel should not have billed the 72-plus hours his petition lists for the three day period in September, 1983 to produce a complaint he had previously filed. This was patently excessive.

Counsel's quixotic quest to win Ms. Keener punitive and compensatory damages consumed a significant amount of unnecessary time for which he is seeking reimbursement from the Army. As the Sixth Circuit stated in 1987, "[i]t is settled beyond dispute in this circuit that a plaintiff may not recover either compensatory or punitive damages in a Title VII action." *Boddy v. Dean*, 821 F.2d 346, 352 (6th Cir.1987) (citing *E.E.O.C. v. Detroit Edison Co.*, 515 F.2d 301, 309 (6th Cir.1975), *rev'd on other grounds*, 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977); *Harrington v. Vandalia–Butler Bd. of Educ.*, 585 F.2d 192, 197 (6th Cir.1978), *rev'd on other grounds*, 441 U.S. 932, 99 S.Ct. 2053, 60 L.Ed.2d 660 (1979); *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1107 (6th Cir. 1981)). Moreover, the Army's investigator testified at trial that although some of the medical evidence Counsel submitted had some evidentiary weight, its submission was not necessary. Thus, the 40 hours Counsel spent, as well as the attendant costs he incurred, to secure medical evidence on Ms. Keener's behalf was unnecessary. So were the 8 hours he claimed for research on January 11, 1986. Since the

question of compensatory and punitive damages was a central issue in the settlement negotiations conducted between mid-March 1986 to May, 1986, many of the 70.25 hours Counsel's fee petition lists for negotiation and settling Ms. Keener's claim were unnecessary. Counsel's petition and supporting evidence are not sufficiently detailed to determine what small portion of these hours are compensable. Underscoring the unreasonableness of the fees and costs generated in pursuit of medical evidence is Counsel's double-billing the Army and the Department of Labor for this time and these expenses.

Because of the lack of detail in Counsel's fee petition and billing records, it is not possible to know exactly how many hours Counsel billed the Army for non-Title VII work and double-billed the Army and the Department of Labor. However, Counsel's trial testimony, both fee petitions and his deposition testimony about billing both agencies highlight the unreasonableness of the 202.75 hours claimed for what Professor Belton called Phase 3 of this action. It is clear that a substantial portion of this time was simply double-billed to both government agencies.

The Court concurs with Professor Belton's evaluation of the reasonableness of the hours claimed by Counsel in what Professor Belton referred to as Phase 4. Phase 4 covers the USACARA investigation of Ms. Keener's claims which culminated in the Army's decision that Ms. Keener had been subjected to sexual harassment at Fort Campbell. Counsel's claim for 214.25 hours for this period is redundant, excessive and unnecessary. This conclusion is based on the nonadversarial nature of the USACARA investigation, the superfluous legal correspondence and evidence Counsel submitted to the USACARA investigator and Counsel's reliance on essentially the same theory, evidence and witnesses in his representation of Ms. Keener before USACARA and the Department of Labor. Phase 4 is another area in which Counsel sought reimbursement from two government agencies in two different proceedings for the same services.

Again, because of the poor billing records in this case, it is not possible to determine precisely how many hours Counsel double-billed. However, for the Phase III and Phase IV periods and Counsel's September 1983 trip to Fort Campbell, it reasonable to conclude that Counsel billed over 200 hours to the Department of Labor and the Army for the same services.

Finally, the 20 hours claimed by Counsel for preparation of his fee petition is unreasonable. Had Counsel maintained his billing records in a coherent manner, he could have drafted his petition in a few hours.

■ Counsel's petition lists a significant amount of travel time. To the extent such time is separately stated in his petition, he is seeking reimbursement for both the time he spent and costs he incurred as a result of his travel at his full hourly rate. However, travel time is compensable only as an expense of litigation. *See Northcross v. Board of Education,* 611 F.2d 624, 639 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). To award Counsel his normal hourly rate and travel expenses would be improper double compensation. *See Daly v. Hill,* 790 F.2d 1071, 1084 & n. 18 (4th Cir.1986).

### Unreasonableness of the Hourly Rate

In the Sixth Circuit, "hourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question." *Coulter v. State of Tennessee,* 805 F.2d 146, 149 (6th Cir.1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3186, 96 L.Ed.2d 674 (1987). There was evidence presented at trial about the difficulty Ms. Keener had in finding counsel in her region of the country willing to take on her type of case. Trial Testimony of Mary C. Keener, Oct. 4, 1990; Trial Testimony of Counsel, Oct. 4, 1990. However, the affidavits Counsel submitted in support of his $100 hourly rate show that the market rate in his community for the type of case at bar was only $75 per hour. Moreover, his normal hourly rate was only $50. Thus, his hourly rate of $100 is also unreasonable.

### Denial of Fee Request

■ Ordinarily, an attorney should recover a reasonable fee, *" 'unless special circumstances would render such an award unjust.' "* *Hensley,* 461 U.S. at 430, 103 S.Ct. at 1933 (citations omitted) (emphasis added). A district court has significant discretion to determine when such special circumstances exist. *cf. Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941 (emphasizing the discretion held by the district court in determining a fee award). Complete denial of a fee request is appropriate in very rare situations when a fee application is grossly and intolerably exaggerated, manifestly filed in bad faith, or wholly undocumented. *Jordan v. United States Dept. of Justice,* 691 F.2d 514, 518 (D.C. Cir.1982); *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 951–952 (1st Cir.1984); *New York Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983); *Brown v. Stackler,* 612 F.2d 1057, 1059 (7th Cir.1980); *cf. Pawlak v. Greenawalt,* 713 F.2d 972, 978 (3rd Cir.1983) (citing *Jordan,* 691 F.2d at 518), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984); *see also Northcross,* 611 F.2d at 636–637 (holding that a district court may cut hours for duplication, padding or frivolous claims). Under these unusual circumstances, an award of attorney's fees would be unjust.

The foregoing discussion of the facts and conclusions of law in this case amply demonstrates that Counsel's fee petition is grossly and intolerably exaggerated and was filed in bad faith. However, the Court wishes to highlight some of the conduct underlying this conclusion. He maintained billing records in such a haphazard fashion that they are of very questionable value. To a large extent, he failed to adequately detail his fee petition. Based on his own evidence, he exaggerated his hourly rate by a factor of 25 percent. He went to extraordinary lengths to double-bill two government agencies. For much of the period between 1983 and 1985, Counsel has sought reimbursement from the Army and the Labor Department for the same services. This amounts to over 200 hours of double-billing. This figure includes a sig-

nificant of amount of travel for which he seeking reimbursement at his full $100 rate, as well as his expenses. He has asked that the government reimburse him, at his full hourly rate, for a seminar he took to learn the law underlying Ms. Keener's claim. He spent well over one hundred hours conducting research and drafting materials unnecessary or irrelevant to Ms. Keener's claim. In addition, he spent over 40 hours and hundreds of dollars securing medical evidence that he knew or should have known was useless to the Title VII claim. He billed the government for work that had nothing to do with the claim at bar. Finally, his arrangement to split his fee with his client was patently unethical, *see* Tenn.S.Ct.R. 8, DR 3–102, and his own expert witness testified to this at trial.

The legislative intent behind attorney-fee shifting statutes was not to " 'to produce windfalls' " to lawyers. *Coulter,* 805 F.2d at 148–149 (citations omitted). When compared to the $93,066.11 he is currently seeking for his representation of Ms. Keener, Counsel's letter of July 29, 1985 indicating he would seek only $15,000 in fees highlights the bad faith underlying this action.

In light of the foregoing, the Court hereby concludes that Counsel is not entitled to any fees or costs.

## III. SANCTIONS

Under Rule 11 of the Federal Rules of Civil Procedure, the signature of an attorney on material submitted to a court

> "constitutes a certificate by the signer ... that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry [the material submitted] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose...."

Fed.R.Civ.P. 11. A court must sanction an attorney who violates this rule. *Id.; Davis v. Crush,* 862 F.2d 84, 88 (6th Cir.1988); *INVST Financial Group, Inc. v. Chem-*

*Nuclear Systems, Inc.,* 815 F.2d 391, 401 (6th Cir.), *cert. denied,* 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). The standard under Rule 11 for measuring conduct is an objective one of reasonableness under the circumstances. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor,* 875 F.2d 1224, 1229 (6th Cir.1989); *INVST,* 815 F.2d at 401. An attorney's subjective good faith about his behavior is not a defense to the imposition of a Rule 11 sanction. *Jackson,* 875 F.2d at 1229, *INVST,* 815 F.2d at 401.

Although the denial of an award of attorney's fees to a prevailing party in a Title VII case serves the same prophylactic purpose as a Rule 11 sanction, sanctions may be levied against counsel in a case such as the one at bar. *See Jordan,* 691 F.2d at 518, *Brown,* 612 F.2d at 1059; *Grendel's Den,* 749 F.2d at 951–952; *cf. Albright v. Upjohn,* 788 F.2d 1217, 1222 (6th Cir.1986) (holding that the selection of the type of sanction to be imposed is within the court's sound exercise of discretion); Advisory Notes to Fed.R.Civ.P. 11 (commenting that court has discretion to tailor sanctions to the particular facts of a case); Schwarzer, Sanctions Under the New Federal Rule 11—A Closer Look, 104 F.R.D. 181, 184, 201–204 (emphasizing that the severity of a sanction should be determined on the basis of the record and the appropriateness of various sanctions). Thus, a Rule 11 sanction may be appropriate even though an alternative is available such as a reduction or denial of attorney's fees.

That counsel signed the complaint in this action to enforce Ms. Keener's settlement agreement with the Army satisfies the procedural hurdle of Rule 11. Measured objectively, Counsel's submission of a fee petition riddled with outrageously inflated, unnecessary and double-billed hours is a clear violation of the requirement under Rule 11 that all papers submitted to a court be well-grounded in fact. Fed.R.Civ.P. 11. By including over 200 hours in his Army fee petition that were also billed to the Department of Labor, Counsel has sought to perpetrate a fraud upon this Court. He

openly conceded double-dipping throughout this entire proceeding.

The Court is also troubled by the manner in which Counsel conducted himself during the course of this claim. This behavior is important to the issue of whether he filed the petition and complaint at bar for an improper purpose. In addition to his double-billing the Army and the Department of Labor, Counsel has sought reimbursement from the Army for a variety of matters unrelated to Ms. Keener's Title VII claim. He devoted inordinate hours reviewing the file, talking to Ms. Keener and travelling for which he seeks a full hourly rate. Before filing his claim for $93,0611.11 in fees and expenses with the Army, he told them in a letter that his fees amounted to only $15,000. Finally, the fee arrangement he had with his client called for him to split any award made pursuant to the petition he filed in this action. All of this underscores that Counsel filed the complaint and petition before the Court for a variety of improper purposes. The Court therefore concludes that Counsel violated Rule 11 of the Federal Rules of Civil Procedure.

Deterrence is the principle goal of Rule 11. *Jackson,* 875 F.2d at 1229. Consequently, courts should impose the least severe sanction that is likely to deter. *Id.* However, in deciding what judicial action will prevent Counsel from future misconduct, the Court cannot ignore Counsel's relentless pursuit of a such an unreasonable fee in the face of Army and EEOC actions which should have put him on notice about his conduct. Denying Counsel's fee request here is appropriate. Moreover, the Court refuses to permit Counsel to recover fees and costs for the litigation of his fee petition. Finally, the Court will refer this matter to the Disciplinary Counsel of Supreme Court of Tennessee to determine if disciplinary action is warranted for violations of Rule 8 of the Rules of the Supreme Court of Tennessee, Code of professional responsibility.

Further action is warranted, however, in light of Counsel's billing practices, consistent lack of ethical judgment and conduct throughout the life of Ms. Keener's claim.

Education is an important component of deterrence. Ideally, a sanctioned attorney will not only learn to refrain from dubious professional conduct but should also understand why his behavior was improper. At the trial and during his deposition, Counsel failed to appreciate the impropriety of his fee-arrangement and double-billing. The Court believes that Counsel would benefit greatly from a refresher course in legal ethics. Consequently, pursuant to Rule 11, the Court will order Counsel to complete a legal education program in legal ethics.

## IV.

In light of the foregoing, the Court DENIES Counsel's fee request in its entirety. Further, the Court ORDERS Counsel to complete a legal education program in legal ethics and to certify to the Court that he has completed such a course within 1 (one) year from the date on which the Order accompanying this Memorandum is entered. The Court further ORDERS the Clerk of the Court to REFER this matter to the Board of Professional Responsibility of the Supreme Court of Tennessee.