Christine DOERING

v.

UNION COUNTY BOARD OF CHOSEN FREEHOLDERS, G. Richard Malgran, Walter Boright, Edward J. Slomkowski, Charlotte De Filippo, Brian Fahey, Robert J. Lapolla, Paul J. O'Keefe, Sandra Flack, Lisa Montana, Joseph Salemme, Marilyn Blacker, Joseph Triarsi, Esq. as Agents, Officers, Employees of the County of Union, New Jersey, and in Their Representative Capacities and Individually.

Appeal of L.T. VINCENTI.

No. 87–5748.

United States Court of Appeals, Third Circuit.

Argued May 6, 1988.

Decided Sept. 14, 1988.

L.T. Vincenti, Elizabeth, N.J., pro se.

Ann F. Kiernan (argued), Jamieson, Moore, Peskin & Spicer, Princeton, N.J., for Christine Doering.

Kenneth I. Nowak (argued), Zazzali, Zazzali & Kroll, Newark, N.J., for Sandra Flack.

Before HIGGINBOTHAM, STAPLETON and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Appellant is a lawyer against whom the district court imposed attorney's fees totalling approximately $25,000 as sanctions under Federal Rule of Civil Procedure 11.

We will affirm the district court's conclusion of a Rule 11 violation, based on its subsidiary finding that the complaint prepared by appellant is legally frivolous. We will also affirm the district court's calculation of the lodestar amount. We will, however, vacate that aspect of its order imposing a particular monetary sanction without consideration of numerous possible mitigating factors, and remand the case for further proceedings.

### I.

From January 7 through March 8, 1985, Christine Doering ("Doering") worked for Union County, New Jersey in the position of a rape crisis counselor and administrator at the Union County Rape Counseling Center. As a result of several incidents resulting in mutual dissatisfaction on the part of both Doering and her employer, she resigned her position by letter dated February 25. On that same day, her employer wrote Doering a letter that did not terminate her employment but did relieve her of her counseling duties.

Appellant L.T. Vincenti ("Vincenti") thereafter filed on Doering's behalf a civil rights complaint in federal district court, pursuant to 42 U.S.C. §§ 1983 and 1985 (1982), against the Union County Board of Chosen Freeholders and the county officials who supervised and administered the rape crisis center. The complaint alleged violations of Doering's first and fourteenth amendment rights. After a number of pretrial conferences (including, apparently, several unsuccessful attempts at settlement) and discovery, defendants moved for summary judgment and attorney's fees pursuant to 42 U.S.C. § 1988 and Fed.R. Civ.P. 11. In two detailed and thoughtful opinions, the district court granted defendants' motions. *Doering v. Union County Board of Chosen Freeholders et al.*, No. 86–1238, slip op. (D.N.J. May 4, 1987) [available on WESTLAW, 1987 WL 11474], *reprinted in* Appellant's Appendix at 17–34 (*"Doering I"*); *Doering v. Union County Board of Chosen Freeholders et al.*, No. 86–1238, slip op. at 1–12 (D.N.J. Sept. 29, 1987) [available on WESTLAW, 1987 WL 18097], *reprinted in* Appellant's Appendix at 3–14 (*"Doering II"*).

In granting the motion for attorney's fees, costs and sanctions, the district court held that "[Doering's] First Amendment claims of deprivation of free speech and association and free exercise of religion are so clearly without merit as to be termed unreasonable." *Doering I, reprinted in* Appellant's Appendix at 34. It relied on *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) and *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), for the proposition that a prevailing defendant may recover fees in a civil rights action

under 42 U.S.C. § 1988 if the action is "meritless in the sense that it is groundless or without foundation." *Doering I, reprinted in* Appellant's Appendix at 33 (quoting *Hughes,* 449 U.S. at 14, 101 S.Ct. at 178). It then found not only that defendants were entitled to recover costs and fees from Doering under § 1988, but that Vincenti had violated Rule 11. *Id.* The court thereafter exercised its discretion to impose costs on Doering herself under § 1988,[1] but ordered Vincenti to pay defendants' attorney's fees as a sanction for violating Rule 11. *Doering II, reprinted in* Appellant's Appendix at 5–6.

Because the district court's decision to require Vincenti to pay defendants' attorney's fees "was based on the filing of a frivolous complaint," *Doering II, reprinted in* Appellant's Appendix at 6, the court felt that "it [wa]s appropriate that the fee award encompass all aspects of the litigation." *Id.* It therefore calculated a lodestar amount, based on submissions from defendants' counsel, *id.* at 6–11, which it refused to adjust upwardly. *Id.* at 11. The court rejected the argument that the award should take into account ability to pay. *Id.* at 12. It also rejected Vincenti's arguments for a full evidentiary hearing on the Rule 11 issue, for recusal of the district court, and for *in camera* review of a state ethics complaint filed by Doering against Vincenti. *Id.* at 12–14.

Vincenti now appeals the imposition of sanctions.[2]

## II.

The traditional American rule is that each party to litigation bears its own costs, including attorney's fees. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Congress has, however, over the years enacted numerous statutory exceptions to the general rule against fee-shifting. Through rules and interpretation, courts have gradually expanded these exceptions.

Underlying these various fee-shifting statutes and rules are policies that seek to foster the filing and litigation of meritorious claims. To that end, one purpose is the compensation of plaintiffs for the actual costs incurred in vindicating legal rights that advance important public policies. The availability of such compensation enables these plaintiffs to act as private attorney generals and enhances the probability that their claims will be litigated. A far different purpose—deterrence of frivolous lawsuits—is also served by the rule, which provides for compensation to defendants to reimburse them for legal fees that they should not have been forced to incur.

Rule 11 provides in relevant part that

[t]he signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, *the court,* upon motion or upon its own initiative, *shall impose* upon the person who signed it, a represented party, or both, *an appropriate sanction, which may include an order to pay to the other party or parties the amount of* the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including *a reasonable attorney's fee.*

---

1. Doering was ordered to pay $1,454.35 in costs to defendants' lawyers. Appellant's Appendix at 11.

2. Vincenti's notice of appeal was taken not from the May 4, 1987 order entering summary judgment in favor of defendants and granting the motion for sanctions, but from the court's Sep-

tember 28, 1987 order and opinion fixing the amount of sanctions. We have appellate jurisdiction over this appeal. *See Napier v. Thirty or More Unidentified Federal Agents,* 855 F.2d 1080, 1089 (3d Cir.1988).

Doering does not appeal the part of the order that imposes costs upon her.

Fed.R.Civ.P. 11 (emphases added). We have stated that, by awarding attorney fees to prevailing defendants in an effort to discourage plaintiffs from bringing baseless actions or making frivolous motions, the Rule's primary purpose is not "wholesale fee shifting but [rather] correction of litigation abuse." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir.1987); *see also* Fed.R.Civ.P. 11 advisory committee notes ("The word 'sanctions' in the caption ... stresses a deterrent orientation in dealing with improper pleadings, motions or other papers."). The standard developed by courts for imposition of sanctions under Rule 11 is stringent because such sanctions 1) are "in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes," *Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558, 564 (E.D.N.Y. 1986), *modified and remanded*, 821 F.2d 121 (2d Cir.), *cert. denied* — U.S. —, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); 2) tend to "spawn satellite litigation counterproductive to efficient disposition of cases," *Gaiardo*, 835 F.2d at 482; and 3) "increase tensions among the litigating bar and between [the] bench and [the] bar." *Eastway Construction Corp.*, 637 F.Supp. at 564. This Court and others have interpreted its language to prescribe sanctions, including fees, only in the "exceptional circumstance", *Gaiardo*, 835 F.2d at 483, where a claim or motion is patently unmeritorious or frivolous. *See, e.g., Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir.1986) ("Rule 11 therefore is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith.' ") (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986)); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986) ("[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.' ") (quoting *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)), *cert. denied sub nom. County of Suffolk v. Graseck*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

Thus, although this provision does contain an element of compensation in the "amount of the reasonable expenses incurred because of the filing," Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 202 (1985) ("*Sanctions*"), its primary purpose is deterrence of abuses of the legal system. Fee-shifting is but one of several methods of achieving the various goals of Rule 11. *See* Schwarzer, *Rule 11 Revisited*, 101 Harv.L.Rev. 1013, 1020 (1988) ("[T]he vast majority of courts agree that the rule's purpose is to deter abuse, with fee-shifting simply one of several methods of achieving deterrence.") District courts should, therefore, consider a wide range of alternative possible sanctions for violations of the rule. A district court's choice of deterrent is "appropriate when it is the *minimum* that will serve to *adequately* deter the undesirable behavior." *Eastway Const. Corp.*, 637 F.Supp. at 565 (emphases added); *see also Sanctions* 104 F.R.D. at 201 ("The basic principle governing the choice of sanctions is that the *least severe* sanctions *adequate* to serve the purpose should be imposed.") (emphases added); Fed.R.Civ.P. 11 advisory committee notes ("The court ... retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case...."). The language of Rule 11 evidences the critical role of judicial discretion, stating that when the district court determines that a filing is in violation of the rule, the court "shall" impose sanctions that "may"—not "shall"—"include an order to pay" the other party's expenses. Other sanctions that could be appropriate in some circumstances, and that may take the place of a monetary award, include publication, an order barring an attorney from appearing for a period of time, reprimand, dismissal of baseless claims or defenses, or even ordering "the attorney[ ] who violated the rule to circulate in [his or her] firm a copy of the opinion in which the pleadings were criticized." *Gaiardo*, 835 F.2d at 482 (citing *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 103 F.R.D. 124, 129 (N.D.Cal.1984), *rev'd*, 801 F.2d 1531 (9th Cir.1986)).

■ Where a district court decides to award a monetary sanction, such as attorney's fees, the total amount of such a sanction (as well as the initial decision whether to impose such a sanction) should be guided by equitable considerations. *See, e.g., Faraci v. Hickey–Freeman Company, Inc.,* 607 F.2d 1025, 1028 (2d Cir.1979) ("Recent legislation extending the power of federal courts to award attorney's fees by no means requires abandonment of the equitable principles that have traditionally governed a court's discretion in such matters. On the contrary, the express grant of authority to award fees presumes continued application of equitable considerations in appropriate cases, both to effectuate the broader legislative purpose and to do justice in the particular case."); *United States Steel Corp. v. United States,* 519 F.2d 359, 363 (3d Cir.1975) ("Traditionally, where a fee-shifting determination is committed by statute to a court's discretion, equitable considerations govern."). As we have stated earlier, "[i]nfluenced by the particular facts of a case, the court may decide that the circumstances warrant imposition of only part of the adversary's expenses or perhaps only a reprimand." *Lieb,* 788 F.2d at 158.

■ In recognition of the broad discretion granted to the trial court to fashion sanctions under Rule 11, this court has enunciated an "abuse of discretion" standard for reviewing the initial decision to impose sanctions as well as the specifics of fee awards. *See, e.g., Napier v. Thirty or More Unidentified Federal Agents,* 855 F.2d at 1091; *Gaiardo,* 835 F.2d 479, 485;

*Eavenson, Auchmuty & Greenwald v. Holtzman,* 775 F.2d 535, 540 (3d Cir.1985). Before it imposed the sanctions, the district court here made the requisite finding that the complaint filed by Vincenti was frivolous, in other words, that he violated the Rule by failing competently to research the law before filing the instant complaint. *Doering,* No. 86–1238, slip op. at 2–3, *reprinted in* Appellant's Appendix at 4–5. Our review of the record, under the "abuse of discretion" standard, leads us to affirm this finding.

Rule 11 provides that the court may assess fees to cover "reasonable expenses [including attorney's fees] incurred because of the filing of the [frivolous] pleading, motion, or other paper...." The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended in responding to the frivolous paper times an hourly fee based on the prevailing market rate. Here, the district court fairly assessed the reasonableness of the hourly fee structure submitted by the defendants' counsel and painstakingly analyzed the propriety of the number of hours for the purposes asserted by counsel and necessitated by Doering's groundless action. We do not disturb the court's lodestar calculation.

■ We do, however, for the first time here, direct the district courts to consider various mitigating factors in their calculation of the total monetary compensation owed by lawyers who have been found to have violated Rule 11. A particularly relevant equitable factor is the sanctioned party's ability to pay.[3] Obviously, the deter-

---

**3.** Recently, the Second Circuit stated that "it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay." *Oliveri,* 803 F.2d at 1281. This decision was soon followed by *Johnson v. New York City Transit Authority,* 823 F.2d 31 (2d Cir.1987), which held that "a district judge need not award a lodestar amount calculated on the basis of hours and time charges but may appropriately take into account various mitigating factors bearing on the degree of sanction that is warranted ... [including] ability to pay...." *Id.* at 32–33. *Oliveri* has been followed in various district court opinions within the Second Circuit, *see, e.g., Becker v. Dunkin' Donuts of*

*America, Inc.,* 665 F.Supp. 211, 218 (S.D.N.Y. 1987); *Eastway Construction Corp.,* 637 F.Supp. 558, 573 (E.D.N.Y.1986); *see also Tedeschi v. Smith Barney, Harris Upham & Co., Inc.,* 579 F.Supp. 657, 664 (S.D.N.Y.1984) (pre-*Oliveri/ Johnson* case which stated that "assessment of fees against a nonprevailing litigant must be fair and reasonable based upon the particular circumstances of the case, including the financial resources and ability of the parties against whom the award is made and the financial status of the prevailing party."), *aff'd,* 757 F.2d 465 (2d Cir.), *cert. denied sub nom. Chapman v. Smith Barney, Harris Upham & Co., Inc.,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985).

rent effect of an award of attorney's fees depends on the extent of the sanctioned party's resources. But while a monetary sanction, such as attorney's fees, is clearly an acceptable choice of deterrent, courts must be careful not to impose monetary sanctions so great that they are punitive— or that might even drive the sanctioned party out of practice.[4] *See, e.g., Napier v. Thirty or More Unidentified Federal Agents,* 855 F.2d at 1094 n. 12 ("[T]he court may consider the relative wealth of the parties in determining the final amount in order to insure that 'a losing party is not subjected to financial ruin.'") (quoting *Tedeschi v. Smith Barney, Harris Upham & Co.,* 579 F.Supp. 657, 664 (S.D.N.Y.1984), *aff'd,* 757 F.2d 465 (2d Cir.), *cert. denied sub nom. Chapman v. Smith Barney, Harris Upham & Co., Inc.,* 474 U.S. 850 (1985)); *Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1439 (7th Cir.1987); *Oliveri,* 803 F.2d at 1281 (approving the district court's reducing sanction against attorney from $51,000 to $5,000 because of his financial condition); *Matter of Yagman,* 796 F.2d 1165, 1185 (9th Cir.1986); *Sanctions,* 104 F.R.D. at 203 (The impact of monetary sanctions "on the person against whom they are assessed must, however, be considered and ability to pay is a factor in determining reasonableness."). Here, the district court refused to reduce the amount of the sanction, and relied on *Inmates of Allegheny County Jail v. Pierce,* 716 F.2d 177 (3d Cir.1983), for the proposition that "the losing party's

financial ability to pay is not a 'special circumstance,'" *id.* at 180, "that would reduce an otherwise reasonable attorney's fee award under [42 U.S.C.] § 1988." The policy considerations behind fee awards to prevailing plaintiffs under civil rights statutes, however, are different from the policies underlying sanctions under Rule 11, and therefore, *Inmates of Allegheny County Jail* is not dispositive.

■ In the present case, it is undisputed that the defendants incurred substantial attorney's fees. On the other hand, Vincenti is a solo practitioner who requested the district court to mitigate the sanction, and who, by his statement at oral argument, has limited financial resources.[5] The record, however, is barren of any evidence relevant to such an inquiry. Thus, in order for the district court to exercise properly its discretion in setting the amount of fees to be assessed against Vincenti, further evidence must be developed upon the issue of his ability to pay.

Finally, the district court, on remand, must consider two other specific mitigating factors when it fashions a Rule 11 sanction against Vincenti. First in that regard, it must consider the fact that he has already been subject to adverse press scrutiny as a result of the sanction by the district court. Secondly it must consider the fact that he has been subject to at least one other disciplinary action. In light of these circumstances, the district court should review its decision to determine whether the primary

---

Other district courts in other circuits have similarly considered ability to pay in the determination of an appropriate sanction for a violation of Rule 11. *See, e.g., Lockette v. American Broadcasting Companies, Inc.,* 118 F.R.D. 88, 92 (N.D.Ill.1987) ("[T]his court may and will consider equitable considerations, such as [plaintiff's and defendant's] abilities to pay....") (citation omitted); *Damiani v. Adams,* 657 F.Supp. 1409, 1419 (S.D.Cal.1987) ("[A]n additional factor a court must consider in determining the reasonableness of an award of attorney's fees is the plaintiff's ability to pay the sum.... [T]his court feels that in light of Plaintiffs' present circumstances, and the injunction the Court has ordered, granting the requests for fees in full would serve little purpose. Accordingly, the court will adjust the fees requested by Defendants proportionately.") (citation omitted); *Cowden v. Montgomery County Society for Cancer*

*Control,* 653 F.Supp. 1072, 1079 (S.D.Ohio 1986) ("The amount of sanctions against Plaintiff's counsel, which will not be minimal, will be the subject of oral argument during the hearing to be conducted on Plaintiff Cowden's ability to pay attorney's fees.").

4. Other proceedings such as disbarment exist to weed out incompetent lawyers. Rule 11 was not enacted for this purpose, but rather to provide deterrence for abuses of the system of litigation in federal district courts.

5. Specifically, at oral argument Vincenti stated that he reported less than $40,000 gross annual income on his 1987 tax return. Proceedings on Appeal, *Doering v. Union County Board of Chosen Freeholders,* No. 87–5748, (3d Cir. May 6, 1988).

purpose of the sanctions that it has imposed—deterrence—can still be satisfied by a lesser monetary award to the defendants. In considering these two additional mitigating factors, it is also appropriate for the district court to review any other evidence that would tend to substantiate Vincenti's claim that he has already been deterred sufficiently from filing frivolous actions.

Reiterating the assertion we made in the context of attorney's fee awards under 42 U.S.C. § 1988, "[a] court's judgment may be guided by a number of elements, including the public interest in encouraging particular suits, the conduct of the parties and economic considerations." *United States Steel Corp.*, 519 F.2d at 363. Such equitable considerations should govern the court's exercise of its discretion in administering Rule 11, both in the initial decision to impose a monetary sanction and determination of the type and amount of the sanction.[6]

### III.

For the foregoing reasons, we will affirm the district court's decision to impose sanctions for Appellant's violation of Rule 11. We will also affirm its calculation of the lodestar amount of defendants' attorney's fees. We will, however, vacate the final amount of monetary sanctions imposed, and remand the case for proceedings consistent with this opinion.

---

**6.** Other mitigating factors which a district court may consider in the context of Rule 11 include but are not limited to 1) the attorney's history of filing frivolous actions or alternatively, his or her good reputation, *Eastway,* 637 F.Supp. at 573; 2) "the defendant's need for compensation," *id.* at 574; 3) the degree of frivolousness, recognizing that cases do lie along a continuum, rather than neatly falling into either the frivolous or non-frivolous category, *id.,* and that Congressional intent, in promulgating Rule 11 sanctions, was not to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," Fed.R.Civ.P. 11 advisory committee notes; *see also, Napier,* 855 F.2d at 1091–1092; *Gaiardo,* 835 F.2d at 483–484 ("The Rule seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law."); 4) "whether the frivolousness also indicated that a less sophisticated or expensive response [by the other party] was required," *Napier,* 855 F.2d at 1094; and 5) the importance of not discouraging particular types of litigation which "may provide the basis for legislative and executive ameliorative action when the courts lack power to act." *Eastway* 637 F.Supp. at 575. These factors were impliedly considered by the district court in its decision of what sanctions to impose. We think that these considerations are relevant also to the *extent* of the monetary award. On remand, the court may, of course, reevaluate these considerations, and more explicitly balance the total amount to be imposed against counsel against any mitigating factors it deems to be relevant.

A district court may also consider in its decision to sanction a party whether the filing was used to harass or punish the non-offending party, that is, the degree of willfulness of the violation. *See Lieb,* 788 F.2d at 157; *Eastway,* 637 F.Supp. at 573. While we acknowledge that the "reference in the former text to willfulness as a prerequisite to disciplinary action has been deleted," Fed.R.Civ.P. 11 advisory committee note, specific language in the 1983 amendment to Rule 11 does speak of "improper purpose" and "harass[ment]". Moreover, as we have said, in any determination of whether a party should be sanctioned, equitable principles that have traditionally governed a court's discretion should not be abandoned. Consideration of the "willfulness" of the offending party's actions is just such an equitable consideration, and thus, remains as a mitigating factor in the calculation of monetary compensation owed by lawyers who are found to have violated the "new" Rule 11.