Robert GIANGRASSO, Plaintiff,

v.

KITTATINNY REGIONAL HIGH SCHOOL BOARD OF EDUCATION, et al., Defendants.

Civ. No. 91–4688 (HLS).

United States District Court, D. New Jersey.

Feb. 24, 1994.

Edward J. Gaffney, Jr., Newton, NJ, for Robert Giangrasso.

Stephen Wiley, Wiley, Malehorn & Sirota, Morristown, NJ, Jeffrey E. Gorrin, Gorrin & Gorrin, Livingston, NJ, Michael Dougherty, Isaacson, Dougherty & Zirulnik, Roseland, NJ, for Kittatinny Regional High School Bd. of Educ.

Stephen Wiley, Wiley, Malehorn & Sirota, Morristown, NJ, Michael Dougherty, Isaacson, Dougherty & Zirulnik, Roseland, NJ, for Robert G. Walker, Susan C. Kappler, Donna Greene, Robert Ferrari.

Arnold Malcolm Mellk, Wills, O'Neill & Mellk, Princeton, NJ, Stephen Wiley, Wiley, Malehorn & Sirota, Morristown, NJ, Michael Dougherty, Isaacson, Dougherty & Zirulnik, Roseland, NJ, for Kesselman, Special Educ. Teacher Defendants as individuals and Governmental Entity.

## ORDER

SAROKIN, District Judge.

This matter having been opened to the court through the January 13, 1994 Order and Recommendation of the Honorable Joel A. Pisano, U.S. Magistrate Judge, made pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.Civ.P. 72(b), and Rule 40(A)(2) of the General Rules of this court; and the Magistrate Judge having recommended: 1) that the court impose sanctions on plaintiff's attorney Edward J. Gaffney, Jr., Esq. in the amount of $100,000, to be paid directly to defendants; 2) that the court permanently enjoin Mr. Gaffney from filing, as an attorney, complaints involving Kittatinny Regional High School; 3) that the court direct the Clerk to refuse to accept any other complaint Mr. Gaffney seeks to file, unless and until reviewed and approved for filing by the duty judge; and 4) that the court refer the matter to the Chief Judge of the District for such disciplinary proceedings as may be appropriate; and that court having received no objections or opposition; and for good cause shown,

IT IS this 22 day of February 1994, hereby

ORDERED that the Report and Recommendation of January 13, 1994 is affirmed and adopted as the opinion and order of this court; and it is further

ORDERED that plaintiff's attorney Edward J. Gaffney, Jr., Esq. pay to the defendants $100,000; and it is further

ORDERED that plaintiff's attorney Edward J. Gaffney, Jr., Esq. be and hereby is permanently enjoined from filing, as an attorney, complaints involving Kittatinny Regional High School; and it is further

ORDERED that the Clerk of the Court refuse to accept any other complaint Edward J. Gaffney, Jr., Esq. seeks to file, unless and until it is reviewed and approved for filing by the duty judge; and it is further

ORDERED that this matter be and hereby is referred to the Chief Judge of the District for such disciplinary proceedings as may be appropriate.

## REPORT AND RECOMMENDATION

PISANO, United Stats Magistrate Judge.

## INTRODUCTION

This matter comes before the court upon defendants' motion for the imposition of sanctions on Edward J. Gaffney, Jr., Esq., counsel for plaintiff, pursuant to Rule 11 of

the Federal Rules of Civil Procedure. Mr. Gaffney did not file opposition to defendants' motion. On November 3, 1993 the Honorable H. Lee Sarokin granted defendants' motion for summary judgment and for sanctions and referred the matter to me for a hearing to determine the nature of the appropriate sanctions. On December 22, 1993, Mr. Gaffney filed an affidavit opposing the imposition of sanctions upon him. Oral argument was heard on January 10, 1994.

## BACKGROUND [1]

On October 30, 1989, plaintiff Robert Giangrasso, then a student at Kittatinny Regional High School, was serving an in-school suspension arising out of a behavioral problem. He was under the supervision of Harriet Kesselman, a teacher employed by the Kittatinny Regional High School. When Ms. Kesselman observed that plaintiff was sleeping, she awoke him. Plaintiff threatened to punch her in the head.

Ms. Kesselman notified Assistant Principal Susan Kappler, who brought plaintiff to her office and said she would investigate the incident after listening to plaintiff's version of the facts, which differed from Ms. Kesselman's only in that plaintiff maintained she had jerked his head back to awaken him. Ms. Kappler spoke with Ms. Kesselman and with the students who had been in the classroom at the time of the incident, who confirmed that Ms. Kesselman had merely touched plaintiff.

In an informal hearing in her office, Ms. Kappler confronted plaintiff with the evidence against him and informed him that he would be suspended for five days. Immediately after conducting the hearing, Ms. Kappler called plaintiff's mother, Ronna Jones, and explained what had happened. Additionally, when plaintiff's step-father, Floyd Jones, came to school to bring plaintiff home, Ms. Kappler had a meeting with both Mr. Jones and plaintiff in which she explained the charges against plaintiff, the evidence, and the reasons for plaintiff's suspension.

Having been notified of plaintiff's suspension and the surrounding circumstances, on October 30, 1989 plaintiff's Child Study Team decided that he should be placed on homebound instruction. On November 1, 1989, plaintiff was placed on homebound instruction, pending the result of a psychiatric review. The Kittatinny staff accommodated Ms. Jones by assigning the tutor she requested.

On December 20, 1989, plaintiff's Child Study Team mailed to Ms. Jones plaintiff's Individualized Education Plan ("I.E.P."). The I.E.P. terminated plaintiff's homebound instruction, effective January 7, 1990, and directed that plaintiff be returned to mainstream schooling. At a meeting with Kittatinny staff on May 25, 1990, Ms. Jones agreed that plaintiff should undergo homebound instruction for the remainder of the 1989–1990 school year. Ms. Jones also agreed to review information concerning four other potential special education placements for plaintiff.

After Ms. Jones rejected these placements, and determined that she did not want plaintiff placed in a school for the emotionally disturbed, the Kittatinny staff offered three other special education programs at public high schools in the region. Plaintiff was accepted at High Point Regional High School in a special education program with a work-study component. Ms. Jones agreed to the placement and to the work-study component.

On September 1, 1990, Mr. Gaffney filed a petition on behalf of plaintiff with the Office of Administrative Law ("OAL"), complaining of plaintiff's placement at High Point Regional High School. All matters raised in the petition were settled on February 15, 1991, and the petition was withdrawn. Plaintiff eventually returned to Kittatinny Regional High School, from which he thereafter graduated on June 28, 1993.

Mr. Gaffney filed the complaint in the present matter on October 28, 1991, naming as defendants the Kittatinny Regional High School Board of Education; Ms. Kappler; Ms. Kesselman; Superintendent Robert

1. The facts are set forth as described in defendants' briefs and affidavits in support of summary judgment. Defendants' version of the facts is deemed admitted because their motion for summary judgment was unopposed. *See* Local Dist.Ct.R. 12G.

Walker; Child Study Team Supervisor Donna Greene; and school psychologist Robert Ferrari. Plaintiff claimed that he had been suspended prior to receiving oral notice of the charges and evidence against him and was not presented with an opportunity to rebut the evidence, contrary to *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Plaintiff alleged that certain defendants conspired to fraudulently convince his mother to place him in a school for the emotionally disturbed. In many respects, the complaint, which sought compensatory relief, punitive damages, and attorneys' fees, reiterated claims that had been withdrawn in connection with the OAL proceeding.

On August 20, 1993 defendants filed for summary judgment and for Rule 11 sanctions against Mr. Gaffney. Mr. Gaffney did not file opposition to defendants' motion. Defendants' version of the facts, which is deemed admitted because plaintiff did not oppose the motion, revealed that: (1) on October 30, 1989, plaintiff admitted that he was sleeping in class and that he threatened to punch his teacher and (2) plaintiff was afforded two hearings on October 30, 1989, both of which were more than sufficient under *Goss*. Moreover, the facts established that plaintiff never attended a school for the emotionally disturbed, thus rendering him unable to prove the necessary element of damages in his civil rights conspiracy claim.[2] Accordingly, on November 3, 1993, Judge Sarokin granted defendants' motion for summary judgment and imposed Rule 11 sanctions on Mr. Gaffney.

**DISCUSSION**

■ Prior to its recent amendment, Rule 11 provided that:

The signature of an attorney ... constitutes a certificate by the signer that the

signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass....

Fed.R.Civ.P. 11.[3] Rule 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'" *Lieb v. Topstone Indus. Inc.*, 788 F.2d 151, 157 (3d Cir.1986). When deciding whether to impose sanctions under Rule 11, a district court must evaluate the reasonableness of the signer's conduct at the time the pleading, motion, or other paper was submitted. *Dura Systems, Inc. v. Rothbury Investments, Ltd.*, 886 F.2d 551 (3d Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 844, 107 L.Ed.2d 838 (1990).

■ The Third Circuit recognized in *Doering v. Union County Board of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir.1988) that the primary purpose of Rule 11 is to deter abuses of the legal system. Although a court may not impose a sanction that is punitive or that might drive an attorney out of practice, *id.*, the sanction imposed should be "'the minimum that will serve to adequately deter the undesired behavior,'" *id.* at 196 (quoting *Eastway Construction Corp. v. City of New York*, 637 F.Supp. 558, 565 (E.D.N.Y.1986), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)).

In *Lieb*, 788 F.2d at 158, the Third Circuit emphasized the discretion of the district court in tailoring an appropriate sanction:

influenced by the particular facts of a case, the court may decide that the circum-

---

**2.** Any objective review of the conduct of the Kittatinny Regional High School staff in dealing with plaintiff's educational program leads to the conclusion that plaintiff and his mother were afforded every procedural right and courtesy which they could expect. It should be recognized that the development of a special education program (I.E.P.), such as the one prepared by the Child Study Team here, is an expensive undertaking requiring the type of dedication demon-

strated by the Kittatinny Regional High School personnel.

**3.** Judge Sarokin ordered sanctions against Mr. Gaffney prior to December 1, 1993, the effective date of the amendments to Rule 11. Thus, the new requirements for a separate motion, *see* Rule 11(c)(1)(A), and a "safe haven" period in which the challenged paper may be withdrawn to avoid sanctions, *id.*, do not apply.

stances warrant imposition of only part of the adversary's expenses or perhaps only a reprimand. In other cases, reference to a bar association grievance committee may be appropriate. The compensatory, punitive, and deterrent aspects of sanctions may have varying claims to priority, depending on the nature of the case and the violation, as well as on the standing of parties and counsel.

*Langer v. Monarch Life Insurance Co.,* 966 F.2d 786, 810 (3d Cir.1992), the Third Circuit reiterated the broad scope of this discretion:

> the district court retains broad discretion in determining the "appropriate" sanction under the rule. What is "appropriate" may be a warm friendly discussion on the record, a hard-nosed reprimand in open court, compulsory legal education, monetary sanctions, or other measures appropriate to the circumstances. Whatever the ultimate sanction imposed, the district court should utilize the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose.

The recently amended Rule 11 incorporates these holdings and provides in pertinent part that:

> (b) **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable op-

portunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> (c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions state below, impose an appropriate sanction upon the attorneys ... that have violated subdivision (b)....
>
> (2) **Nature of Sanction; Limitations.** A sanction imposed for a violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.... [T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

In recommending an appropriate sanction, I am guided by both the cases interpreting Rule 11 and the amendments which codify the holdings of those cases.

### Mr. Gaffney's Prior Conduct

█ Mr. Gaffney has a history of fierce disputes involving Kittatinny Regional High School which is not limited to the instant case. Careful consideration of this history is necessary to determine the appropriate sanction. Therefore, I will set forth the pertinent facts of Mr. Gaffney's conduct in previous litigation involving Kittatinny Regional High School.

Since 1990, Mr. Gaffney has represented a number of plaintiffs in cases involving Kittatinny Regional High School. Several of these actions were brought in this court. In the first of these cases, entitled *King v. Kittatinny Regional High School,* D.N.J.Civ. No. 90–4045, 1991 WL 1761, Mr. Gaffney represented Adrien King, a student whose grievances included being suspended for failing to appear for a pep rally and two deten-

tions. During the course of his representation of Adrien King, Mr. Gaffney appeared at the school to meet with administrators. Mr. Gaffney told Superintendent Walker that he intended to "smear him in *The New York Times.*"

In an opinion issued from the bench on June 13, 1991, Judge Wolin dismissed the case and reprimanded Mr. Gaffney for his conduct in appearing at the school unannounced and for confronting the staff. *King v. Kittatinny Regional High School*, D.N.J. Civ. No. 90–4045, 1991 WL 1761. Indeed, Mr. Gaffney has attached to his affidavit opposing Rule 11 sanctions an article which summarizes Judge Wolin's admonishment:

> [Judge] Wolin said ... Gaffney had contributed to this incident, ignoring normal channels of authority.
>
> 'I think your conduct escalated this matter before the court,' he told Gaffney. 'I think your conduct was ill-considered, ill-motivated, and, sir, I tell you, unprofessional.' He said Gaffney's appearance at the school was 'not in the best interests of Adrien King, and potentially in fulfillment of his own personal agenda, which I am not aware of.'

Tony Borelli, *Kittatinny Case Judge Sharply Faulted Official*, N.J. Herald, July 14, 1991, at A7.

Mr. Gaffney did not waste time in failing to heed Judge Wolin's reprimand. On December 4, 1991, Mr. Gaffney filed suit on behalf of Richard Williams, a suspended student, against the Kittatinny Regional High School Board of Education, an assistant principal, and a teacher. *Williams v. Kittatinny Regional High School Board of Education*, D.N.J. Civ. No. 91–5316. Richard Williams is the younger brother of Robert Giangrasso, plaintiff in the instant case.

On August 21, 1992, at a conference before the Honorable Dickinson R. Debevoise, Mr. Gaffney agreed to a voluntary dismissal of the complaint in *Williams*, Civ. No. 91–5316.

Judge Debevoise entered an order dismissing Richard Williams' complaint with prejudice with respect to all defendants. The order provided that any defendant had the right to move for Rule 11 sanctions against Mr. Gaffney within 30 days of the order. The defendants so moved.

Judge Debevoise imposed sanctions on Mr. Gaffney for filing claims he should have known were frivolous. *Williams v. Kittatinny Regional High School*, Civ. No. 91–5316, slip. op. at 18 (D.N.J. Oct. 27, 1992). Noting that the first count of the complaint relied solely on *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), Judge Debevoise observed that:

> [n]ot only is [*Goss v. Lopez*] not complicated, but the majority's opinion is only 12 pages in length. Furthermore, a federal district court opinion issued by Judge Wolin, shows that approximately two years ago, Mr. Gaffney brought a similar action against the same high school alleging that another student, Adrien King, was deprived of his due process right to a hearing under *Goss v. Lopez*. (Citation omitted). It is not unreasonable to expect that either Mr. Gaffney understood or could have understood the *Goss* case prior to filing the Complaint.

*Williams*, slip op. at 12. Judge Debevoise considered Mr. Gaffney's conduct in *Williams*, as well as his history of litigation against Kittatinny Regional High School, and concluded that "[Mr. Gaffney] was not thinking of what was in the best interest of his client.... The school system and the public have been unduly burdened in this and other matters by reason of Mr. Gaffney's obsession with litigation and his hostility toward the school system."

The *Williams* defendants incurred $70,145.24 in attorneys fees. However, because Judge Debevoise found Mr. Gaffney's financial resources to be minimal, the sanction against him was limited was to $5000.[4]

---

4. Mr. Gaffney has not paid any portion of the $5000 award, despite what defendants term "significant collection efforts." (Dfs.' Br. in Supp. of Monetary Sanctions at 4). Indeed, *Williams* is not the only case in which defendants were unsuccessful in collecting fees owed by Mr. Gaff-

ney. In *King v. Walker*, Docket No. SSX–L–895–92, Superior Court of New Jersey, Sussex County, Mr. Gaffney represents the mother of Adrien King against Superintendent Robert Walker. Mr. Gaffney persisted to litigate that case for many months although he failed to answer the

*Williams,* slip op. at 17–18. The court believed $5000 to be the minimum penalty which would ensure Mr. Gaffney's compliance with Rule 11 in the future. *Id.* Unfortunately, Mr. Gaffney's filing of a frivolous complaint in the present case has proven the court's assessment to be overly optimistic.

**Mr. Gaffney's Conduct in the Present Litigation**

The bulk of the claims in the instant case arise from plaintiff's one day suspension and ensuing mandatory homebound instruction. Plaintiff incurred the suspension for threatening to punch his teacher in her head. Plaintiff's primary claim is based on *Goss v. Lopez, supra. Goss* set forth the minimum due process requirements to be afforded a students who is suspended for ten days or less: (1) the student must be given oral or written notice of the charges against him; (2) if the student denies those charges, he is entitled to an explanation of the evidence which forms the basis for those charges; and (3) the student is to be given an opportunity to present his or her side of the story. *Goss,* 419 U.S. at 581, 95 S.Ct. at 740.

The last two requirements apply only where a student denies the charges against him. In the instant case, when confronted shortly after the incident by an assistant principal with the charges *and evidence* against him, plaintiff did not deny that he had been sleeping in class or that he threatened to hit his teacher. Therefore, defendants were not required to explain the evidence to plaintiff and give him an opportunity to present his side of the story. However, on at least two occasions during the date of the incident, plaintiff was afforded an opportunity to present his version of the facts. The undisputed facts reveal that defendants more than met the procedural due process requirements of *Goss.*

Mr. Gaffney had previously represented both Adrien King and Richard Williams in *Goss* cases against the same school district. As Judge Debevoise noted, *Goss* is not a complicated case. It is not unreasonable to expect Mr. Gaffney to have understood *Goss*

counterclaim and interrogatories. On October 12, 1993, an order was entered prohibiting Mr. Gaffney to continue the case unless he paid de-

prior to filing the complaint in this matter. However, even the fact that he was sanctioned in *Williams* for filing a frivolous claims under *Goss* did not deter Mr. Gaffney from continuing the instant action and from filing papers in support of it.

Mr. Gaffney must also have realized that Count VII of plaintiff's complaint was not well-grounded in law or fact. Count VII alleged that defendants Robert Walker, Robert Ferrari, and Donna Greene conspired to fraudulently convince plaintiff's mother to place plaintiff in a school for the emotionally disturbed, in violation of various federal rights.

Plaintiff never attended a school for the emotionally disturbed. Defendants have demonstrated that they acted in accordance with the obligation of a school district to provide an I.E.P., which was in fact acceptable to plaintiff's parent. Therefore, plaintiff was not damaged by the alleged conspiracy. Rather, the Kittatinny staff accommodated Ms. Jones' expressed preference that plaintiff not be placed in school for the emotionally disturbed by offering plaintiff a number of educational programs at public schools. Plaintiff was accepted to the High Point High School and *Ms. Jones agreed to the placement.* Plaintiff attended High Point High School, and has since graduated from Kittatinny Regional High School.

Damages are a necessary element of a civil rights conspiracy claim. *Earle v. Benoit,* 850 F.2d 836, 844 (1st Cir.1988). At oral argument on January 10, 1994, Mr. Gaffney described himself as a "civil rights attorney." Surely Mr. Gaffney must have realized that the civil rights conspiracy claim was baseless because the alleged conspiracy did not result in an any injury to plaintiff.

The court is aware that Mr. Gaffney never filed any opposition to defendants' motion for summary judgment, and that he filed opposition to the accompanying motion for Rule 11 sanctions only after such sanctions had been granted. Mr. Gaffney's behavior is especially inexcusable given that Judge Sarokin

fendants' counsel fees. Mr. Gaffney has not yet paid those fees.

granted his request for an extension of almost a month in which to file opposition papers. Mr. Gaffney's failure to file opposition to defendants' summary judgment motion is but one occasion in this litigation during which he exhibited an unwillingness to comply with fundamental rules of practice, thus violating his obligation to act in the best interests of his client.[5] Mr. Gaffney has repeatedly failed to comply with discovery deadlines, has failed to provide counsel with copies of necessary documents, and has failed to appear or was late for conferences and oral arguments.

On one occasion, Mr. Gaffney kept both the court and defense counsel waiting several hours while he was inexplicably absent. On June 14, 1993, after signing in with chambers for a status conference, Mr. Gaffney left the courthouse before the conference began and returned to his office in Newton, New Jersey. Mr. Gaffney did not inform the court that he was leaving. After calling Mr. Gaffney's office, I learned of his whereabouts and ordered his return.

In connection with the present hearing to determine the appropriate sanction, Mr. Gaffney committed one of his more egregious transgressions. Mr. Gaffney served a subpoena dated December 14, 1993 on John McDonald, an employee of the Kittatinny Board of Education, directing him to produce records and give testimony regarding an OAL petition filed in 1980 by Mr. Gaffney's parents regarding the Kittatinny Regional High School Board of Education's refusal to permit his sister, Catherine Gaffney, to graduate from high school early. On December 22, 1993, Mr. Gaffney also personally delivered subpoenas to the offices of Wiley, Malehorn, & Sirota, counsel for defendants Walker, Kappler, Greene, and Ferrari, demanding the aforementioned documents. I note that the documents embraced by the subpoena have no relevance to this action or to this proceeding.

On December 28, 1993, defendants moved to quash the subpoenas. The moving papers reveal that Mr. Gaffney's delivery of the subpoenas to Wiley, Malehorn & Sirota was unprofessional and inflammatory. Mr. Gaffney repeatedly referred to certain members of the firm as "snake attorneys" who "lied under oath." (Raynes Aff. at ¶¶ 7–10). He confronted the staff and darted into various offices uninvited, interrupting at least one attorney in the midst of a telephone call. (Raynes Aff. at ¶ 11) A member of the firm notified Mr. Gaffney that he was calling the police and Mr. Gaffney left the office shortly before the police arrived. (Raynes Aff. at ¶ 13). A witness testified that Mr. Gaffney's demeanor was "manic" and "out-of-control." (Raynes Aff. at ¶ 15). One of the firm's secretaries was so disturbed by Mr. Gaffney's visit that she asked a police officer to walk her to her car. (Raynes Aff. at ¶ 15).

During oral argument on January 4, 1994, Mr. Gaffney readily admitted that he referred to certain members of Wiley, Malehorn & Sirota as "snake attorneys." Mr. Gaffney claimed a need for the subpoenaed documents to prove that his parents did not file the OAL petition on behalf of Catherine Gaffney. Mr. Gaffney argued that Mr. McDonald lied about the existence of the petition in an affidavit he submitted in the *Williams* case. Mr. Gaffney stated that he wished to prove his parents never filed the petition to show that he bore no personal animosity toward defendants. This is the same argument Mr. Gaffney made in his belated affidavit filed in opposition to sanctions. He swore that "there never was a petition, decision, settlement or such action filed by my family." (Gaffney Aff. at ¶ 11).[6]

---

5. It appears that Mr. Gaffney has generally exhibited indifference toward complying with fundamental rules of practice. In *Jones v. Kittatinny Regional High School Bd. of Educ.*, Civ. No. 91–2243, slip op. at 10–11 (D.N.J.1992) the Honorable John C. Lifland criticized Mr. Gaffney for submitting an affidavit which was almost entirely argumentative in contravention of Local Rule 27A and for failing to provide the court and opposing counsel with exhibits and a letter brief to which he referred. *Jones* concerned Mr. Gaff-

ney's request for an award of counsel fees on behalf of Ronna Jones. Mr. Gaffney sought $2,963.75 in fees in connection with the OAL petition filed on behalf of Robert Giangrasso. Judge Lifland awarded Mr. Gaffney $500 in legal fees, an amount Judge Lifland deemed "generous." *Jones*, slip op. at 10.

6. I find that Mr. Gaffney's affidavit is, at least in such portion, a false affidavit.

When defense counsel presented him, in open court, with copies of the petition and related documents at oral argument, Mr. Gaffney indicated that the documents were forgeries.

After having reviewed the documents, I found as a fact that Mr. Gaffney's parents did file an OAL petition which they voluntarily withdrew on February 5, 1981, and that the matter was dismissed with prejudice.[7] I granted defendants' motion to quash the subpoenas and issued protective orders.

Mr. Gaffney's conduct in attempting to serve the subpoenas at Wiley, Malehorn & Sirota clearly constituted an abuse of process. He admits that he referred to certain members of the firm as "snake attorneys." As outrageous as this incident was, it is indicative of Mr. Gaffney's conduct throughout the course of this litigation.

Defendants repeatedly assert that Mr. Gaffney's conduct is spurred by a "personal vendetta" against Kittatinny Regional High School. In connection with a reprimand for various violations of the Rules of Professional Conduct, Mr. Gaffney was ordered by the Supreme Court of the State of New Jersey to undergo psychiatric evaluation. At oral argument on January 10, 1994, Mr. Gaffney represented to this court that he had undergone the ordered evaluation which revealed that he does not have a disorder. I must therefore conclude that he filed the instant case willfully and intentionally, and because the case is without merit, that he did it for his own purposes, whatever they might be.

This court is not called upon to examine Mr. Gaffney's psyche to determine the cause of his hostility toward defendants. However, this court is required to make factual findings as to whether plaintiff's filing of frivolous claims was for an improper motive. Mr. Gaffney's relentless history of unprofessional behavior toward defendants, including the repeated filing of frivolous claims, confirms that he bears them an obvious animosity. The manner in which Mr. Gaffney has conducted this litigation demonstrates that he has committed every transgression Rule 11 is intended to deter. Mr. Gaffney has abused the legal system to harass defendants. Previous attempts at deterrence having been unsuccessful, I conclude that extreme sanctions are justified and required in this case.

## Recommendations as to the Appropriate Sanctions

### Attorneys' Fees

■ As discussed, both the case law interpreting Rule 11 and the amendments make clear that the purpose of sanctions is to deter future violations, and that monetary sanctions should not be more severe than those necessary to deter repeated violations of the rule. See Fed.R.Civ.P. 11(c)(2); Doering, 857 F.2d at 194–96. Doering instructs that sanctions should not be so severe as to put an attorney out of practice. Doering, 857 F.2d at 196.

In his affidavit, Mr. Gaffney describes his financial situation as "dire." (Gaffney Aff. at ¶ 18). He sets forth his assets, liabilities, and the limited nature of his practice in an attempt to ameliorate the threat of financial disaster which this application poses to him. As previously noted, Mr. Gaffney is already in default of two orders of monetary sanctions.

However, the enormity of this situation demands extraordinary sanctions. In proceeding with litigation of this frivolous suit, Mr. Gaffney has cost Kittatinny Regional High School Board of Education approximately $132,500 in legal fees [8] and has sub-

---

7. For purposes of this motion, I specifically did not consider his parents' OAL petition as part of Mr. Gaffney's history of litigation against Kittatinny Regional High School Board of Education, because Mr. Gaffney was not the attorney of record or a party to the case. However, as discussed in the body of this Report and Recommendation, Mr. Gaffney's misrepresentations regarding the existence of the petition, and his behavior in attempting to subpoena information on the petition, bear on whether he conducted this litigation to harass defendants.

8. These fees were as follows: (1) $85,206.35 for defendants Robert Walker, Susan Kappler, Donna Greene, and Robert Ferrari; (2) $17,290.48 for defendant Kittatinny Regional High School Board of Education; (3) $30,000 for defendant Harriet Kesselman. I have reviewed the certifications of service submitted by counsel, and I find that the bills are based upon reasonable hourly rates and upon time reasonably expended providing the services. See Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir.1990).

jected the individual defendants to stress, inconvenience, and required absence from their professional duties in attending to this matter. By targeting the Kittatinny Regional High School Board of Education, a public body, as well as the administrator and teacher defendants, Mr. Gaffney has placed a considerable and unnecessary burden on the public. Moreover, in causing this court to expend substantial time and resources on this frivolous suit, Mr. Gaffney has further unduly burdened the public.

Therefore, I recommend that monetary sanctions of $100,000 be imposed on Mr. Gaffney. This sum represents approximately ⅔ of the amounts expended for defendants' legal fees. Although this sanction is large, it is that which I find will satisfy the requirement that sanctions be sufficient to deter repetition.[9] The sanctions of $5000 imposed by Judge Debevoise in *Williams,* as well as the Judge's stern admonishment, have not deterred Mr. Gaffney from repeating to violate Rule 11. Indeed, Mr. Gaffney persisted to litigate the frivolous *Goss* claims in the instant matter well after receiving Judge Debevoise's painstaking explanation of *Goss* and why Richard Williams' *Goss* claims were frivolous. Therefore, a greater sanction is required to deter Mr. Gaffney from committing another violation of Rule 11.

I recommend that the court order the monetary sanctions to be paid to defendants, rather than to the court. The amended Rule 11 indicates that attorneys fees are to be paid to the moving party if "warranted for effective deterrence." Fed.R.Civ.P. 11(c)(2). Mr. Gaffney's strong animosity toward defendants apparently prompted this frivolous suit. Requiring him to bear the costs of this litigation will likely deter him from filing further frivolous suits against those to whom he may be similarly hostile.

### Additional Sanctions

■ As emphasized in *Lieb, Langer,* and the new Rule 11(c)(2), the court may impose non-monetary sanctions where appropriate to deter future violation of Rule 11. Therefore, to ensure that Mr. Gaffney will not continue to file frivolous suits against defendants, I recommend that the court permanently enjoin Mr. Gaffney from filing, as an attorney, any complaint in this court involving Kittatinny Regional High School. To protect other parties from similar abuse, I also recommend that the court direct the Clerk to refuse to accept any other complaint Mr. Gaffney attempts to file, unless and until the complaint is approved for filing by the duty judge sitting on the day of the attempted filing.

The Committee Notes on the revision of Rule 11 recognize that "the court has available a variety of possible sanctions to impose for violations, such as ... referring the matter to disciplinary authorities." Fed.R.Civ.P. 11 Committee Notes, 146 F.R.D. 583, 587 (1993). Moreover, Local Rule 7(E) codifies the court's traditional authority to supervise and monitor the conduct of attorneys admitted to practice. Local Rule 7(E)(2) provides that:

> [w]hen misconduct or allegations of misconduct which, if substantiated, would warrant discipline of an attorney, shall come to the attention of a Judge of this Court, and the applicable procedure is not otherwise mandated by these Rules, that Judge shall refer the matter in writing to the Chief Judge.

During the course of this litigation, Mr. Gaffney has violated several Rules of Professional Conduct. By filing this lawsuit, Mr. Gaffney violated R.P.C. 3.1, which prohibits an attorney from bringing a frivolous proceeding. Mr. Gaffney repeatedly failed to meet case management deadlines, therefore violating R.P.C. 3.2. Rule 3.2 directs attorneys to make reasonable efforts to expedite litigation. In failing to file opposition to a dispositive motion, Mr. Gaffney appears to have violated R.P.C. 1.3, which requires that an attorney act with reasonable diligence and promptness in representing a client.

Mr. Gaffney's appalling conduct in attempting to serve subpoenas at Wiley, Malehorn & Sirota, which I find to have been an abuse of process, appears to have violated

---

**9.** I note parenthetically that $100,000 represents less than half the legal fees expended in the *Williams* and *Giangrasso* cases combined.

R.P.C. 8.4(d). Rule 8.4(d) prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice. Moreover, his misrepresentation to the court regarding the existence of the OAL petition filed by his parents appears to have violated R.P.C. 8.4(c).

Based on the foregoing examples of Mr. Gaffney's misconduct in this litigation, I recommend that the court refer the matter to Chief Judge Gerry, pursuant to Rule 11 and Local Rule 7(E)(2), for such investigation and further proceedings as may be deemed appropriate.

## CONCLUSION

Mr. Gaffney's conduct in bringing and litigating this frivolous suit was willful and part of a pattern. Mr. Gaffney was previously admonished and sanctioned by judges in this district, to no avail. Mr. Gaffney has prejudiced the individual defendants at great public expense. Strong sanctions are required to prevent Mr. Gaffney from repeating to violate Rule 11. Therefore, I recommend: (1) that $100,000 representing attorneys' fees be paid to defendants; (2) that Mr. Gaffney be permanently enjoined from filing, as an attorney, complaints involving Kittatinny Regional High School; (3) that the court direct the Clerk to refuse to accept any other complaint Mr. Gaffney seeks to file, unless and until reviewed and approved for filing by the duty judge; (4) that the court refer the matter to the Chief Judge of the District such for disciplinary proceedings as may be appropriate.

DATED January 13, 1994.