CAMERONS HARDWARE INC.;
Frank Lobb; Jeffrey Lobb;
Kristen McDermott

v.

INDEPENDENCE BLUE CROSS; Independence Blue Cross; Aetna Inc.; Ronald A. Williams; Joseph A. Frick; Commonwealth of Pennsylvania Departments of Health and Insurance

Lawrence M. Otter, Appellant

(pursuant to Fed. R. App P. 12(a)).

No. 09–1973.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Jan. 15, 2010.

Opinion Filed: Jan. 29, 2010.

John M. Elliott, Esq., Frederick P. Santarelli, Esq., Elliott Greenleaf & Siedikowski, Blue Bell, PA, for Aetna Inc.

Susan C. Mangold, Esq., Maureen M. Mcbride, Esq., James C. Sargent, Jr., Lamb McErlane, West Chester, PA, for Independence Blue Cross.

Barry N. Kramer, Esq., Claudia M. Tesoro, Esq., Office of Attorney General of Pennsylvania, Philadelphia, PA, for Commonwealth of Pennsylvania Departments of Health and Insurance.

Before: SCIRICA, Chief Judge, BARRY and SMITH, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Appellant Lawrence Otter appeals an order holding him in civil contempt for failing to pay attorneys' fees and certain costs previously imposed as a sanction by the District Court. We will vacate in part the order of the District Court and remand for further proceedings consistent with this Opinion.

## BACKGROUND[1]

This appeal emanates from a 2008 ERISA action in which various plaintiffs— represented by Otter—sued Independence Blue Cross ("IBC"), the Commonwealth of Pennsylvania's Departments of Health and

---

1. Otter has filed an appendix without continuous pagination. Accordingly, we cite not to the appendix, but to the relevant documents.

Insurance ("the Commonwealth"), and other defendants not relevant to this proceeding. IBC and the Commonwealth each filed motions to dismiss the complaint, with IBC also filing a motion for sanctions, including attorneys' fees and costs, pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. Thereafter, the Commonwealth also filed a motion for attorneys' fees pursuant to 28 U.S.C. § 1927.[2] The substance of the motions to dismiss, as the Commonwealth summarizes it, was that "the claims that plaintiffs were trying to raise ... had been raised before, in proceedings involving several of the same parties (and counsel) now before the district court, and every court to have considered these claims had rejected them." (Commonwealth's Br. at 6.) On April 25, 2008, the District Court granted the motions to dismiss.

On July 28, 2008, the District Court, after a hearing, granted the motions for sanctions.[3] The Court concluded that "[a]t the time Mr. Otter filed the Complaint on behalf of his clients, he had been informed four times previously his claim had no basis in fact or law. Yet, he unreasonably brought the same claim without any additional law or evidence to support." (July 28, 2008 Sanctions Order at 12–13.) Noting that "it is difficult to imagine a better example of frivolous, vexatious, and unreasonable multiplicity of proceedings or the continued pursuit of a baseless claim in the face of several irrebuttable defenses," the Court determined that sanctions were appropriate. (*Id.* at 11.) The Court found that Otter "did not challenge the amount of the fees and costs claimed," and held that the "little mitigating evidence" put forth was insufficient to reduce the "unopposed lodestar calculations" under the factors articulated in *Doering v. Union County Board of Chosen Freeholders*, 857 F.2d 191 (3d Cir.1988).[4] (*Id.* at 16.) The Court ordered payment of sanctions within thirty days of the Order. Otter did not appeal.

Neither the Commonwealth nor IBC received payment within the thirty day period prescribed by the District Court, and so, in November 2008, they filed motions to hold Otter in civil contempt. The Court held a hearing on March 5, 2009. Otter did not submit a response to the motions; rather, on the date of the hearing, attorney Frank Marcone filed—on Otter's behalf—a motion to vacate the sanctions order of July 28, 2008. Marcone appeared at the hearing to represent Otter. Marcone, however, was then serving a two-year suspension and the Court found that because he had never entered an appearance on behalf of Otter, his representation of Otter would not fall within the provision of the suspension order permitting him to "wind up" his practice. The Court denied Otter's

---

2. At the April 2008 hearing on the motions to dismiss, "the court—clearly leaning toward granting the motions to dismiss—directed the Commonwealth agencies to file a motion for attorneys' fees too." (Commonwealth's Br. at 7–8.) The Commonwealth sought $6,352.50, and IBC sought $35,436.91 in fees and costs. Otter does not now—nor did he before the District Court—oppose these calculations. (July 28, 2008 Sanctions Order at 16.)

3. With respect to IBC's motion, sanctions were ordered against Otter and three other parties; however, the Commonwealth's sanctions motion was directed only at Otter.

4. In *Doering*, we explained that a district court should consider a variety of "equitable considerations" both when deciding whether to impose sanctions and when determining the appropriate amount of those sanctions. 857 F.2d at 197. We listed "[o]ther mitigating factors which a district court may consider in the context of Rule 11" such as, for example, "the attorney's history of filing frivolous actions ..., the defendant's need for compensation, the degree of frivolousness," and the willfulness of the offender's actions. *Id.* at n. 6 (internal citations omitted).

request for a continuance, and denied as untimely his motion to vacate the July 28, 2008 order imposing sanctions.

The hearing on the motions for contempt went forward. Claiming that he lacked the financial resources to pay the sanctions that had been imposed, Otter submitted his 2008 income tax return, and informed the District Court that his law practice had grossed under $1,000 since the beginning of 2009 and that he had "received notices" that he was behind on his electric and phone bills. He stated that his "non-compliance has not been willfull," and that although he would have liked to comply with the sanctions order, he "simply [did] not have the funds to do that." (March 5, 2009 Hearing at 20, 21.) The Court then addressed the Commonwealth and IBC: "What do you want me to do? You can't get blood from a stone, and the argument he's making is that he doesn't have the capacity to comply, so it's not a willful disobeyance of my order." (*Id.* at 23.)

Following the hearing, the District Court issued a written order holding Otter in contempt of the July 28, 2008 order imposing sanctions and entering judgment on that order.[5] The March 5, 2009 order did not make a finding as to Otter's ability to pay those sanctions. Otter appealed.

## DISCUSSION

Otter argues that he should not have been held in contempt because his disobe-dience of the District Court's order instructing him to pay to attorneys' fees was not willful but, rather, was a result of his being in "desperate straits" financially.[6] (Appellant's Br. at 6, 9.)

We review an order holding a party in contempt for abuse of discretion, and will reverse only where the decision "is based on an error of law or a finding of fact that is clearly erroneous." *Marshak v. Treadwell,* 595 F.3d 478, 487 (3d Cir.2009) (quoting *Roe v. Operation Rescue,* 54 F.3d 133, 137 (3d Cir.1995)); *see Harris v. City of Phila.,* 47 F.3d 1311, 1321 (3d Cir.1995). In order for a party to be held in civil contempt,[7] three elements must be established by clear and convincing evidence: "(1) that a valid order of the court existed; (2) that the defendant had knowledge of the order; and (3) that the defendant disobeyed the order." *Berne Corp. v. Gov't of the V.I.,* 570 F.3d 130, 139 (3d Cir.2009) (citation omitted). To the extent there are ambiguities in the evidence, they "must be resolved in favor of the party charged with contempt." *John T. v. Del. County Intermediate Unit,* 318 F.3d 545, 552 (3d Cir. 2003). Because "willfulness is not a necessary element of civil contempt ..., [any evidence of defendant's] good faith does not bar the conclusion ... that [the defendant] acted in contempt." *Robin Woods Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir. 1994) (quoting *Harley–Davidson, Inc. v.*

---

5. The March 5, 2009 order also entered judgment in favor of IBC against the other plaintiffs in the initial litigation. Those parties are not involved in this appeal.

6. Otter also argues, without citing any supporting case law, that by preventing Marcone—a suspended attorney—from representing him at his contempt hearing, the Court "denied Otter his right to counsel ... in violation of his Sixth Amendment rights." (Appellant's Br. at 8.) As this was not a criminal proceeding, the Sixth Amendment was not implicated. *See Fadiga v. Att'y Gen.,* 488 F.3d 142, 157 n. 23 (3d Cir.2007) ("As a matter of formal constitutional doctrine, the Sixth Amendment right to (effective) counsel does not apply in a civil context.").

7. Otter does not dispute Appellees' characterization of the contempt order as "civil." Where, as here, a party "fail[s] to comply with a valid court order," civil contempt is imposed. *United States v. Harris,* 582 F.3d 512, 514 (3d Cir.2009).

*Morris,* 19 F.3d 142, 148–49 (3d Cir.1994)). The Supreme Court has explained, however, that in "a civil contempt proceeding ... a defendant may assert a *present* inability to comply with the order in question". *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). Similarly, we have recently made clear that "an order of civil contempt [is or will become] punitive if a contemnor is unable to comply with the order." *United States v. Harris,* 582 F.3d 512, 520 (3d Cir.2009). While the party raising the impossibility defense has the burden of proving it, courts "will not be blind to evidence that compliance is now factually impossible." *Rylander,* 460 U.S. at 757, 103 S.Ct. 1548.

Otter does not argue that he did not violate a known court order imposing sanctions; rather, the thrust of his argument is that the District Court "disregarded the financial evidence presented at the contempt proceeding," which he claims demonstrates his inability to pay the ordered amount. (Appellant's Br. at 7.) At the contempt hearing, Otter presented the Court with his 2008 tax return while explaining, "I tried to comply with the Court's order, but I simply do not have the funds to do that." (March 5, 2009 Hearing at 20.) He informed the Court that although he might eventually be able to make some payments if he was successful in his representation of various clients in pending matters, "$40,000 would just bankrupt [him]." (*Id.* at 27.) Despite recognizing Otter's precarious financial state at the hearing when it observed that "[y]ou can't get blood from a stone," the Court made no findings orally or in its written order as to whether Otter was then unable to comply with the order or would be unable to do so in the foreseeable future and, if so, whether an order of civil contempt would be punitive. This was an abuse of discretion.

## CONCLUSION

We will vacate the March 5, 2009 order of the District Court insofar as it holds Otter in civil contempt, and will remand this matter for further proceedings consistent with this Opinion.